[Civ. No. 21868. First Dist., Div. One. Dec. 17, 1964.]

CYRIL SAUNDERS, Plaintiff and Appellant, v. NEW CAPITAL FOR SMALL BUSINESSES, INC., Defendant and Respondent.

326

Cyril Saunders, in pro. per., for Plaintiff and Appellant.

Shirley, Saroyan, Cartwright & Peterson and Robert E. Cartwright for Defendant and Respondent.

SULLIVAN, P. J.— Plaintiff appeals from an order granting defendant's motion for summary judgment and from the summary judgment in favor of defendant entered pursuant to said order. While the summary judgment "is an appealable judgment as in other cases" (Code Civ. Proc., § 437c) the order granting the motion for summary judgment is merely a nonappealable preliminary order (3 Witkin, Cal. Procedure (1954) p. 2160; *Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770, 771 [145 P.2d 364]) and the attempted appeal therefrom must be dismissed. We proceed

to review the proceedings below on the appeal from the judgment.

Plaintiff's complaint filed on July 19, 1962, alleged a common count in *quantum meruit* for the recovery of $14,150 for services rendered defendant New Capital for Small Businesses, Inc., hereafter called New Capital. Defendant's demurrer was overruled. Defendant thereupon moved for summary judgment, supporting its motion with the declaration[1] of its president Frederick Quigley.

Quigley's declaration states that written interrogatories had been submitted to plaintiff in which the latter stated that the services for which he seeks recovery were performed in connection with the providing of $175,000 working capital to defendant and additionally in connection with a loan made by defendant to Associated Coin Amusement Corporation (hereinafter called Associated).

In reference to the first group of services (i.e., in connection with the working capital) the declaration states that all such services were completed more than two years prior to the filing of plaintiff's complaint; that the sale of defendant's stock was completed and the money derived therefrom was actually in defendant's bank account by June 30, 1960; that on May 13, 1960, and July 12, 1960 (more than two years prior to the filing of the complaint on July 12, 1962) plaintiff secretly had issued to himself checks totalling $14,000 which he claimed to be due him for services rendered in connection with the sale of defendant's stock and the providing of working capital; and that accordingly all services rendered *in this connection* were barred by the statute of limitations.

Quigley's declaration further states that the trial court "can take judicial notice" of San Francisco Superior Court action No. 513992 commenced on August 23, 1961, by New Capital for Small Businesses, Inc., defendant herein, against Cyril Saunders, plaintiff herein, to recover the aforementioned $14,000 taken by Saunders; that Saunders in his answer filed in said action alleged that he was entitled to said money *by reason of services rendered to the corporation in selling its stock and raising working capital*; that *Saunders never filed therein any counterclaim or cross-complaint* claiming any other monies for any other services; that according to the pretrial statement filed by New Capital in that action, it contended that Saunders was not entitled to $14,000 or any other sum

---

[1]Executed in conformity with Code Civ. Proc., § 2015.5.

for services rendered *in connection with the sale of stock or the providing of working capital*; that Saunders' trial memorandum of points and authorities reaffirmed his claim to the money; that, after a trial of said action No. 513992, the court rendered judgment against Saunders declaring that said $14,000 should be repaid and returned to said corporation (defendant in the instant case) together with interest and costs; that said judgment was affirmed by this court in *New Capital for Small Businesses, Inc.* v. *Saunders* (1963) 215 Cal.App.2d 728 [30 Cal.Rptr. 563]; and that *the issue* of whether or not plaintiff was entitled to any compensation for services rendered *in connection with the sale of defendant's stock is now res judicata.*

Quigley's declaration further alleges that plaintiff in his answers to aforesaid interrogatories states that the monies sought to be recovered in the instant action ''are further for services rendered *in connection with the obtaining of a loan* for Associated'' (italics added); that plaintiff was given an opportunity to resign as counsel for New Capital when it was discovered that he had taken the aforementioned $14,000 from the corporate account; that plaintiff did resign as defendant's counsel on March 20, 1961, and performed no legal services for defendant thereafter; that plaintiff did perform some legal services for defendant in connection with said loan prior to the date of his resignation; that, however, neither $150 nor any other sum was due plaintiff in this connection; that on July 18, 1961, plaintiff was paid $350 by check in full payment for all services rendered *in connection with obtaining a loan for Associated*; that in his answers to the written interrogatories, plaintiff admitted he performed no services after June 30, 1961; that plaintiff never demanded additional monies in respect to the Associated loan; that in the first action brought *by* New Capital *against* him, *plaintiff did not assert any counterclaim or cross-complaint* for any additional monies; and that no monies are due plaintiff for services for the Associated loan.

Plaintiff filed a declaration in opposition to the motion most of which, instead of setting forth facts (see Code Civ. Proc., § 437c), asserts various legal conclusions, propositions and arguments together with citations of legal authorities purportedly marshalled to support plaintiff's position that the judgment in the former action is not res judicata of plaintiff's instant claim. In reference to the first group of services,

namely, those pertaining to providing working capital, plaintiff's declaration makes no denial of or averment contradictory to those allegations of Quigley's declaration relevant to the first action of *New Capital for Small Businesses, Inc.* v. *Saunders* or plaintiff's asserted defense in such action.[2] However, in reference to the second group of services, namely those pertaining to the Associated loan, said declaration states that plaintiff did not accept the check of July 18, 1961, as payment in full for services rendered.

The trial court granted defendant's motion for a summary judgment. However neither the order granting such motion nor the summary judgment itself gives any indication of the precise reason for the court's decision. Basically the question now confronting us is whether in the light of the declarations filed below there is a "triable issue of fact" (Code Civ. Proc., § 437c; *Coyne* v. *Krempels* (1950) 36 Cal.2d 257, 262 [223 P.2d 244]; *Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 747 [19 Cal.Rptr. 709]).

The position of the moving party, defendant herein, as disclosed by its declaration filed below is this: Plaintiff seeks compensation for two groups of services—those pertaining to the providing of working capital and those pertaining to the Associated loan. The issue as to whether plaintiff is entitled in the instant action to any compensation for the first group is now res judicata because this issue was determined in the prior action of *New Capital for Small Businesses, Inc.* v. *Saunders.* Plaintiff is not here entitled to recover for the second group because he failed to assert a counterclaim or cross-complaint for them in the prior action.

The position of plaintiff as disclosed by his declaration filed below is this: He does not deny that in the prior action brought against him to recover the $14,000 he asserted in defense the claim that he was entitled to such money for his services to New Capital in providing working capital but he contends nevertheless that his present claim to such money was not an adjudicated issue in the prior action. As to the second group of services he denies that he was paid in full for the Associated loan matter but he does *not* deny that he failed to

[2]In his declaration plaintiff states "[T]hat FRED QUIGLEY was not a stockholder, director or President of NEW CAPITAL FOR SMALL BUSINESSES, INC. when Plaintiff rendered the services of raising capital for the said Defendant" thereby impliedly admitting that the services for which recovery is here sought were for raising capital for defendant.

assert a counterclaim or cross-complaint for them in the prior action. Plaintiff contends in his briefs filed herein (1) that his present action is not "barred because of res judicata"; and (2) is not "barred by the Statute of Limitations." Our decision herein makes it unnecessary for us to discuss the latter point.

■ "The doctrine of res judicata rests upon the ground that the party to be affected, or some other with whom he is in privity, has litigated, or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction, and should not be permitted to litigate it again to the harassment and vexation of his opponent. Public policy and the interest of litigants alike require that there be an end to litigation. ■ In applying the doctrine the cases recognize a distinction between the effect of a judgment operating by way of *estoppel* in a later action upon a *different* cause of action and one operating by way of *bar* against a second action upon the *same* cause of action. (Citations.)" (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 637-638 [134 P.2d 242]; *Dillard* v. *McKnight* (1949) 34 Cal.2d 209, 214 [209 P.2d 387, 11 A.L.R.2d 835]; see *McDougall* v. *Palo Alto etc. School Dist.* (1963) 212 Cal.App.2d 422, 428 [28 Cal.Rptr. 37]; 2 Freeman on Judgments § 677, pp. 1429-1430; Rest., Judgments, §§ 68, 79; 29 Cal.Jur.2d, Judgments, § 214, pp. 167-168; Code Civ. Proc., § 1908.)[3]

Thus the doctrine of res judicata has a double aspect. ■ Under the doctrine considered in its secondary aspect as a collateral estoppel "[a] former judgment operates . . . in a later action upon a different claim or cause of action, . . . as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." (*Todhunter* v. *Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916]; *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 201-202

---

[3]Code Civ. Proc., § 1908 provides in relevant part: "The effect of a judgment or final order in an action or special proceeding before a court or judge of this state, or of the United States, having jurisdiction to pronounce the judgment or order, is as follows: . . . 2. In other cases, the judgment or order is, in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action or proceeding."

This section is merely declaratory of the common-law rule of res judicata. (*Bartlett Hayward Co.* v. *Industrial Accident Com.* (1928) 203 Cal. 522, 535 [265 P. 195].)

[99 P.2d 652, 101 P.2d 497] ; *Clark* v. *Lesher* (1956) 46 Cal.2d 874, 880-881 [299 P.2d 865] ; *Taylor* v. *Hawkinson* (1957) 47 Cal.2d 893, 895-896 [306 P.2d 797] ; *Louis Stores, Inc.* v. *Department of Alcoholic Beverage Control* (1962) 57 Cal.2d 749, 757 [22 Cal.Rptr. 14, 371 P.2d 758] ; *McDougall* v. *Palo Alto etc. School Dist., supra,* 212 Cal.App.2d 422, 428; *Verdier* v. *Verdier* (1962) 203 Cal.App.2d 724, 739 [22 Cal.Rptr. 93].) It is settled that in such instances ''the prior determination of an issue is conclusive in a subsequent suit between the same parties as to that issue and every matter which might have been urged to sustain or defeat its determination.'' (*Pacific Mutual Life Ins. Co.* v. *McConnell* (1955) 44 Cal.2d 715, 724-725 [285 P.2d 636] (appeal dismissed 350 U.S. 984 [76 S.Ct. 471, 100 L.Ed. 852]), and cases there collected; *Sutphin* v. *Speik, supra*; *Smith* v. *City of Los Angeles* (1961) 190 Cal.App.2d 112, 127-128 [11 Cal.Rptr. 898] ; *Mitchell* v. *Jones* (1959) 172 Cal.App.2d 580, 585-586 [342 P.2d 503, 77 A.L.R.2d 1404] ; *Estate of Tassi* (1961) 196 Cal.App.2d 494, 499 [16 Cal.Rptr. 616].) But despite general statements found in many cases that a prior judgment between the same parties is conclusive not only as to issues actually determined but as to those which might have been determined, it should be emphasized that, where the doctrine of res judicata is applied in its secondary aspect as a collateral estoppel rather than in its primary sense as a merger or bar, the effect of the prior judgment is confined only to those issues in the second action which were actually litigated in the first. (*Todhunter* v. *Smith, supra,* 219 Cal. 690, 695; *Clark* v. *Lesher, supra,* 46 Cal.2d 874, 880; *Sutphin* v. *Speik, supra,* 15 Cal.2d 195, 201-202; *Taylor* v. *Hawkinson, supra,* 47 Cal.2d 893, 895-896 ; *Mitchell* v. *Jones, supra,* 172 Cal.App.2d 580, 585-586 ; 3 Witkin, Cal. Procedure (1954) pp. 1947-1948.)

In the instant matter, since the prior action of *New Capital for Small Businesses, Inc.* v. *Saunders* was based on a different cause of action from the present action of *Saunders* v. *New Capital for Small Businesses, Inc.,* we apply the doctrine of res judicata in its secondary aspect. The defense of res judicata may be properly raised by a motion for summary judgment (*Smith* v. *City of Los Angeles, supra,* 190 Cal.App.2d 112, 128) and indeed such procedure has not been questioned in the case at bench.

We refer to the criteria for a collateral estoppel set forth by the court in *Bernhard* v. *Bank of America* (1942)

19 Cal.2d 807, 813 [122 P.2d 892]: "In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" Two of the ingredients are immediately apparent: First, the party (Saunders) against whom the doctrine is asserted in the present action was the defendant in the prior action. Secondly, there was a prior judgment on the merits in the prior action.

Were the issues decided in the prior case identical with those presented in the instant one? As we have pointed out, the action before us is on a common count. The record contains neither an answer nor a bill of particulars. Although the complaint tenders the broad issue as to whether defendant is indebted to plaintiff for work, labor and services, actually the instant record, including those portions pertaining to the summary judgment proceedings, discloses the following two issues: (a) Is defendant indebted to plaintiff for services rendered in connection with providing working capital? (b) Is defendant indebted to plaintiff for services rendered in connection with the loan to Associated? The declaration of the moving party (defendant) clearly establishes, and the declaration of the opposing party (plaintiff) in no way denies by proper factual allegations, that the first of these issues was actually litigated in the prior action in which the court determined that Saunders was not entitled to retain any part of the $14,000 for services allegedly rendered for providing working capital and ordered all of such money to be repaid and returned to New Capital. However, it is equally clear from both declarations that the second issue pertaining to the Associated loan was not actually litigated in prior action. Furthermore, while in respect to this second issue, New Capital asserts that Saunders was paid in full and no monies are due him for such services, the latter in his declaration in opposition denies that he was paid in full. ▮▮▮ These facts stated in the opposing declaration must be accepted as true. (*Desny* v. *Wilder* (1956) 46 Cal.2d 715, 725-726 [299 P.2d 257]; *Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553, 555-556 [122 P.2d 264]; *Snider* v. *Snider, supra,* 200 Cal.App.2d 741, 750; *Buffalo Arms, Inc.* v. *Remler Co.* (1960) 179 Cal.App.2d 700, 703 [4 Cal.Rptr. 103].) Thus considered and quite apart from any

other applicable rule of law, it would appear that plaintiff's declaration has established a triable issue of fact on the second issue. ▊ Unless other principles of res judicata compel a different result, this would mean that a triable issue of fact is presented on the complaint as a whole, since summary judgment procedure, while permitting a *partial* summary judgment for a *plaintiff* (Code Civ. Proc., § 437c, 4th par.), makes no similar provision authorizing a *partial* judgment for a *defendant*. (*de Echeguren* v. *de Echeguren* (1962) 210 Cal. App.2d 141, 152 [26 Cal.Rptr. 562]; see 2 Witkin, Cal. Procedure (1954) p. 1717.)

▊ Has it nevertheless been conclusively determined that because of the prior judgment plaintiff is not entitled to recover for his services rendered in connection with the loan to Associated? It will be recalled that New Capital's declaration states that Saunders failed to assert a counterclaim or cross-complaint for such services in the prior action and that Saunders' declaration in opposition does not deny such fact. On this undisputed factual basis, defendant contends that plaintiff is now foreclosed from recovering for such services by virtue of the provisions of Code of Civil Procedure section 439. We think this contention has merit.

▊ Section 439 provides: ''If the defendant omits to set up a counterclaim *upon a cause arising out of the transaction set forth in the complaint* as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor.'' (Italics added.)

This section embodies a special aspect of the doctrine of res judicata (*Clark* v. *Lesher, supra,* 46 Cal.2d 874, 881) and represents a statutory extension of collateral estoppel (*Datta* v. *Staab* (1959) 173 Cal.App.2d 613, 620 [343 P.2d 977]). Its effect is this: If a claim arising out of the same transaction on which the complaint is based and tending to diminish or defeat the plaintiff's recovery is not pleaded as a counterclaim, it is forever barred. (*Flickinger* v. *Swedlow Engineering Co.* (1955) 45 Cal.2d 388, 392-393 [289 P.2d 214]; *Schrader* v. *Neville* (1949) 34 Cal.2d 112, 114-115 [207 P.2d 1057]; *Todhunter* v. *Smith, supra,* 219 Cal. 690, 693; *Datta* v. *Staab, supra,* 173 Cal.App.2d 613, 619; *Hardware Mutual Ins. Co.* v. *Valentine* (1953) 119 Cal.App.2d 125, 130 [259 P.2d 70]; *Brunswig Drug Co.* v. *Springer* (1942) 55 Cal.App.2d 444, 449-452 [130 P.2d 758]; *Rolapp* v. *Federal Building etc. Assn.* (1936) 11 Cal.App.2d 337, 343 [53 P.2d 974]; *Kittle Mfg. Co.* v. *Davis*

(1935) 8 Cal.App.2d 504, 512-513 [47 P.2d 1089] ; *Kittle Mfg. Co.* v. *Speer* (1934) 3 Cal.App.2d 148, 150 [39 P.2d 278] ; cf. *Torrey Pines Inn, Inc.* v. *Superior Court* (1964) 227 Cal. App.2d 265, 266 [38 Cal.Rptr. 565] ; *Black* v. *Dillon* (1963) 213 Cal.App.2d 295, 296 [28 Cal.Rptr. 678] ; 2 Witkin, Cal. Procedure (1954) p. 1595.)

It is clear, however, that a subsequent action is not barred by the provisions of Code of Civil Procedure section 439 if it is not founded on the same transaction on which the complaint was founded in the prior action. (See *Machado* v. *Borges* (1915) 170 Cal. 501, 503 [150 P. 351] ; *Peak* v. *Republic Truck Sales Corp.* (1924) 194 Cal. 782, 794 [230 P. 948] ; *Jones* v. *Mortimer* (1946) 28 Cal.2d 627, 630 [170 P.2d 893] ; *Black* v. *Dillon, supra,* 213 Cal.App.2d 295, 296; *Posz* v. *Burchell* (1962) 209 Cal.App.2d 324, 339 [25 Cal.Rptr. 896] ; 2 Witkin, *op. cit.*, p. 1597.)

 The obvious intent of the Legislature in enacting this statute was to provide for the settlement in a single action of all conflicting claims between the parties arising out of the same transaction (*Flickinger* v. *Swedlow Engineering Co., supra,* 45 Cal.2d 388, 393) and thus to avoid multiplicity of actions and conflicting judgments. (*Clark* v. *Lesher, supra,* 46 Cal.2d 874, 882.)

 While the case by case treatment may not have developed a definitive and crystal clear concept of the term "transaction" as used in section 439, there is every indication that the term has been liberally construed to the end of achieving the above legislative purpose. In *Baker* v. *Eilers Music Co.* (1917) 175 Cal. 652 [166 P. 1006] it was held that a tenant's failure to set up a counterclaim for damages for wrongful eviction in a prior action by the landlord for rent estopped him from pleading the claim for eviction in a subsequent action. It is clear that the one transaction from which both claims arose was the leasing of property. In *Kittle Mfg. Co.* v. *Speer, supra,* 3 Cal.App.2d 148 it was held that plaintiff's action to recover money paid to defendant salesman over a period of months as advancements for commissions on sales made under a written contract between the parties was barred because of the failure of plaintiff to assert said claim as a counterclaim in a prior action by defendant against plaintiff in which, among other relief, defendant sought to recover commissions allegedly earned. The court said that "[T]he term 'transaction' employed in this section embraces not only a commercial negotia-

tion or contract but also whatever may be done by one person which affects another's rights and out of which a cause of action may arise'' (p. 149) citing *Colla* v. *Carmichael U-Drive Autos, Inc.* (1930) 111 Cal.App. Supp. 784 [294 P. 378].[4] In the *Kittle* case it is apparent that the claims of both parties arose from the same transactions, namely the sales made under the contract.

In *Kittle Mfg. Co.* v. *Davis, supra,* 8 Cal.App.2d 504, Kittle sought damages for the breach of a contract under which Davis granted Kittle an exclusive license to manufacture and sell patented beds and Kittle agreed to pay Davis stipulated royalties on all sales. It was there held that the failure of Kittle to assert by counterclaim[5] its claim for damages in a prior action brought by Davis against Kittle to recover royalties was a bar to the recovery in the subsequent action of such damages as were sustained by Kittle up to the time of trial of the former action. The court held that the same transaction, namely the licensing of the beds, was the foundation of the rights of both parties. ''The right of a defendant to counterclaim for causes arising out of the same transaction as a plaintiff's claim has always been recognized by statute in this state. Ever since the adoption of the codes the failure to file a counterclaim in such cases has been a bar to any further action upon the claim. The policy of the law is so obvious as to require little comment. *It is to require reciprocal rights flowing from a common source to be determined in a single action,* thus avoiding not only unnecessary vexatious litigation but also the contingency of conflicting judgments, of which those involved in the instant case are conspicuous examples.'' (P. 513; italics added.)

In *Black* v. *Dillon, supra,* 213 Cal.App.2d 295, the plaintiff, a doctor, sued to recover compensation for professional services rendered over a period of several months to defendant and her family, consisting of her husband and children. It was there held that plaintiff's failure to assert a counterclaim in

---

[4]The court in the *Colla* case, *supra,* construing the term transaction as used in Code Civ. Proc., § 378 observed that ''The broad scope of the term is exhibited in the definition taken from the law dictionaries and adopted in *Scarborough* v. *Smith,* 18 Kan. [399], 406, which is in these words: 'Whatever may be done by one person which affects another's rights, and out of which a cause of action may arise is a ''transaction''.' '' (P. 786.)

[5]It is notable that Kittle did file a cross-complaint for damages in the prior action but thereafter dismissed it.

a prior action for malpractice brought by Mrs. Dillon against Black, arising out of surgery performed on her, was a bar to the recovery by Black in the later action of charges made for services performed on Mrs. Dillon personally but not a bar as to the charges for services performed for the other members of the family. It would thus appear that the services rendered to Mrs. Dillon constituted the underlying transactions from which the rights of both parties flowed.

It appears to us, therefore, that in the light of the decisions construing it, the term ''transaction'' found in section 439 is not confined to a single, isolated act or occurrence such as, for example, a contract (*Flickinger* v. *Swedlow Engineering Co., supra,* 45 Cal.2d 388), a lease (*Baker* v. *Eilers Music Co., supra,* 175 Cal. 652), or an automobile collision (*Todhunter* v. *Smith, supra,* 219 Cal. 690; *Datta* v. *Staab, supra,* 173 Cal. App.2d 613) but may embrace a series of acts or occurrences logically interrelated (*Kittle Mfg. Co.* v. *Speer, supra,* 3 Cal. App.2d 148; *Kittle Mfg. Co.* v. *Davis, supra,* 8 Cal.App.2d 504; *Black* v. *Dillon, supra,* 213 Cal.App.2d 295). It is noteworthy that this interpretation of the term parallels the interpretation of the same term found in the comparable Federal Rule of Civil Procedure on compulsory counter-claims. It is significant, we think, that in each instance the critical term has been construed so as to effectuate the purpose of avoiding multiplicity of actions.[6]

[6]Rule 13(a) of the Federal Rules of Civil Procedure provides: ''A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.'' (28 U.S.C.A. Supp. 1963, p. 29.)

In determining the meaning of the word ''transaction'' as used in former Equity Rule 30, the predecessor of Rule 13(a), the United States Supreme Court said: '' 'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.'' (*Moore* v. *New York Cotton Exchange* (1926) 270 U.S. 593, 610 [46 S.Ct. 376, 70 L.Ed. 750]; in accord: *United States for Use & Benefit of Pickard Engineering Co.* v. *Southern Construction Co., Inc.* (6th Cir. 1961) 293 F.2d 493, 500, reversed on other grounds by 371 U.S. 57 [83 S.Ct. 108, 9 L.Ed.2d 31]; *Union Paving Co.* v. *Downer Corp.* (9th Cir. 1960) 276 F.2d 468, 470; *United States* v. *Eastport Steamship Corp.* (2d Cir. 1958) 255 F.2d 795, 804; *United Artists Corp.*

In the instant case, it is not disputed, indeed it was conceded by plaintiff at oral argument, that the claim for $150 is for legal services rendered in connection with the Associated loan matter. Nor can there be any question that this claim would have diminished the recovery of New Capital in the prior action. Whether this claim is now barred in the present action turns on the question whether it arises out of the transaction set forth in New Capital's complaint in the prior action or, to state it another way, turns on the question whether New Capital's claim in the prior action and Saunders' cause of action for services rendered arose out of the same transaction.

New Capital's complaint in the prior action was on a common count for money had and received.[7] But the bill of particulars[8] filed therein, which is an amplification and part of the complaint (2 Witkin, Cal. Procedure (1954) p. 1222), discloses that the acts on which New Capital's cause of action

v. *Masterpiece Productions* (2d Cir. 1955) 221 F.2d 213, 216; *Lesnik* v. *Public Industrials Corp.* (2d Cir. 1944) 144 F.2d 968, 975; *Hancock Oil Co.* v. *Universal Oil Products Co.* (9th Cir. 1940) 115 F.2d 45, 47.)

As we think the foregoing cases make clear, the requirement for a compulsory counterclaim under the federal rule that it arises "out of the transaction or occurrence that is the subject matter of the opposing party's claim," has been broadly interpreted by the federal courts in the interest of avoiding circuity and multiplicity of action. "The apparent purpose of such compulsion is to prevent a multiplicity of lawsuits." (*Union Paving Co.* v. *Downer Corp., supra*, 276 F.2d 468, 470 citing 3 Moore's Federal Practice (2d ed.) § 13.12.) We have already pointed out that section 439 of the Code of Civil Procedure was enacted with the same purpose in view and has been liberally construed to the end of effectuating such purpose. (See *Flickinger* v. *Swedlow Engineering Co., supra*, 45 Cal.2d 388, 392-393; *Clark* v. *Lesher, supra*, 46 Cal.2d 874, 882.)

[7] The prior action of *New Capital for Small Business, Inc.* v. *Saunders, supra*, was brought to the attention of the trial court in the instant case by this defendant's declaration in support of its motion for summary judgment. As we said in *Taliaferro* v. *Davis* (1963) 216 Cal.App.2d 398, 409 [31 Cal.Rptr. 164]: "The lower court was entitled to take judicial notice of all the related prior proceedings in its court involving the litigation between appellant and respondent as well as the decisions of the appellate courts of this state relative to such proceedings." (Citing *Flores* v. *Arroyo* (1961) 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263]; *Taliaferro* v. *Taliaferro* (1960) 178 Cal.App.2d 140, 142 [2 Cal. Rptr. 716]; *Taliaferro* v. *Taliaferro* (1962) 200 Cal.App.2d 190, 191 [19 Cal.Rptr. 220]; see also *Signal Oil & Gas Co.* v. *Taliaferro* (1962) 207 Cal.App.2d 271, 274 [24 Cal.Rptr. 593].) In any event, the interests of justice and the equities of the present case require us to take judicial notice of the prior action and we do so. (*Watson* v. *Los Altos School Dist.* (1957) 149 Cal.App.2d 768, 772 [308 P.2d 872]; *Taliaferro* v. *Taliaferro, supra*, 200 Cal.App.2d 190, 191.)

[8] Designated therein as "Answer to Demand for Bill of Particulars."

was predicated consisted of the taking from the corporation by Saunders of sums totalling $14,653.12 without the authorization or approval of the board of directors; that the various sums were taken for an alleged commission and for certain equipment sold by Saunders to the corporation allegedly through companies in which he was financially interested; and that at the time of these transactions Saunders was a director and general counsel and ''in a fiduciary capacity.'' In short the complaint in the prior action, as amplified by the bill of particulars, sought recovery of money from Saunders because of his conduct as director and general counsel of the corporation. The foundation of this claim was the dual relationship of director and corporation and attorney and client subsisting between the parties and Saunders' activities pursuant thereto. To state it another way, plaintiff's right to recover money from Saunders flowed from the fiduciary relationship existing between them. At the same time, Saunders' right to recover for services rendered flowed from the same relationship. It was because Saunders was director and general counsel that he was in the position to have obtained possession of the corporate funds sought to be recovered in the prior action and to have rendered services for the corporation for which he now seeks compensation.

It is obvious that when the prior action was commenced on August 23, 1961, Saunders' connection with the corporation had been severed. The action called into question his conduct and sought relief because of alleged breaches of his fiduciary obligations. It is also obvious from the complaint, as amplified by the bill of particulars, that the relationship between the corporation and Saunders being at an end, he was being called upon, as it were, to give an account of his stewardship. He was being charged with malfeasance. If there were any items on the other side of the account for which he was entitled to credit, the situation required that he present them. Indeed he seems to have fully realized that he should make claim for compensation for the first group of services pertaining to the working capital. He should not be permitted to withhold his claim for compensation for the services pertaining to the Associated loan. He had reasonable notice from the complaint that the time had come for the settling of his accounts.

We do not wish to be understood as holding that a relationship of director and corporation or of attorney and client will in all instances necessarily establish that a cause of

action set forth in a complaint and one asserted by counterclaim have arisen out of the same transaction. Particular circumstances may indicate that the dealings between the parties were based on two or more separate and distinct arrangements or were devoid of any logical interrelation. (See for example *Posz* v. *Burchell, supra,* 209 Cal.App.2d 324, 339; *Black* v. *Dillon, supra,* 213 Cal.App.2d 295, 296.) But, under the facts of the instant case, we believe that the subsisting fiduciary relationship, admittedly continuous and uninterrupted during the period of time involved, embraced all of Saunders' activities so that for our present purposes these activities as a whole constituted the transactions involved. As in *Black* v. *Dillon, supra,* 213 Cal.App.2d 295, the underlying "transaction" was the series of acts and services performed for Mrs. Dillon pursuant to the relationship of physician and patient existing between the doctor and her (but not including those rendered pursuant to such independent relationships existing between the doctor and other family members) so here the underlying "transaction" was the series of acts and services performed for the corporation pursuant to the fiduciary relationship between the parties.

In sum, the rights of both parties herein flow from a common source and should have been determined in the prior action. When upon the filing of the bill of particulars in such prior action this common source—the "transaction" set forth as the foundation of New Capital's claim—became apparent, Saunders was required to set up a counterclaim on all causes of action arising out of such transaction. Having failed to do so there, he is now barred from asserting his cause of action in the present case. His contention that his claims for services did not arise until after the prior action was terminated and the money was ordered repaid is utterly devoid of merit and warrants no extended consideration.

The attempted appeal from the order granting defendant's motion for summary judgment is dismissed. The judgment is affirmed.

Molinari, J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.