878 P.2d 978 (1994)
Alan G. KAROW, as administrator of the Estate Of Carl Frank Martillaro, Deceased, Appellant,
v.
Vaughn H. MITCHELL, Jr., James B. Mitchell, Charles E. Mitchell, Michael H. Mitchell and Jon T. Mitchell, Individually, Charles E. Mitchell and Vaughn H. Mitchell, Jr., as trustees of the Vaughn H. Mitchell Trust, Respondents.
Alan G. KAROW, as administrator of the Estate Of Carl Frank Martillaro, Deceased, Petitioner,
v.
The FIRST JUDICIAL DISTRICT COURT of the State of Nevada IN AND FOR CARSON CITY, and the Honorable Michael Griffin, District Judge, Respondents, and
Vaughn Mitchell, Jr., James B. Mitchell, Charles E. Mitchell, Michael H. Mitchell and Jon T. Mitchell, Real Parties in Interest.
Nos. 23505, 23842.
Supreme Court of Nevada.
July 28, 1994.
*979 Laura FitzSimmons, Las Vegas, Hamilton & Lynch, Reno, for appellant/petitioner.
Allison, MacKenzie, Hartman, Soumbeniotis & Russell and Joan Wright, Carson City, for respondents/real parties in interest.

OPINION
PER CURIAM:
Docket No 23505 is an appeal from an order of the district court denying Carl Frank Martillaro's motion to vacate a foreign judgment.[1] Docket No. 23842 is an original petition for a writ of mandamus or prohibition. In his petition, Martillaro seeks an order from this court directing the district court to grant Martillaro's motion to strike the filing of the foreign judgment.

FACTS
On July 15, 1983, Martillaro, respondents and others executed a settlement agreement resolving litigation concerning a mining lease to the Plumbago Mine, a gold mine owned by respondents. Martillaro, who was designated on the first page of the agreement as a member of the Plumbago Group, signed the agreement three times: on page 14 as vice president of the Plumbago Group, on page 15 as a member of the Plumbago Group and on page 16 as counsel for Robert Plante and the minority shareholders of a group called Dakota Investments.
In the settlement agreement, the Plumbago Group agreed, among other things, to "[i]ndemnify and hold harmless the Mitchell Group [respondents] from any and all claims, demands, causes of action, damages, costs and attorneys fees incurred by it as a result of any claim, demand, or cause of action made or raised by any successor or assign of the Plumbago Group or anyone claiming through or under it."
Subsequently, a suit was brought against respondents and respondents incurred legal fees in successfully defending that suit. Respondents commenced an action in California Superior Court for indemnification under the settlement agreement excerpted above. After years of litigation, the California Superior Court entered an order granting summary judgment in respondents' favor on December 11, 1991. Subsequently, on February 18, 1992, the California Superior Court entered a post-judgment "order granting attorney's *980 fees against defendants Carl Martillaro and Eugene Chaney."[2]
On March 13, 1992, respondents filed in the First Judicial District Court in Carson City, Nevada, an exemplified copy of the California order granting attorney's fees, along with a notice of filing of a foreign judgment, affidavits of the judgment creditors and proof of service. On March 30, 1992, Martillaro filed in district court a motion to strike the notice of filing of foreign judgment. Martillaro argued that the order for attorney's fees was not a judgment under California law and that the affidavits in support of the notice were technically insufficient.
In response to Martillaro's motion, respondents sought clarification from the California trial court of its orders and judgments. The matter before the trial court was complicated by the fact that Martillaro's co-defendant in the California action had satisfied the compensatory portion of the damages awarded in the original order granting summary judgment, leaving only the attorneys' fees award unsatisfied. The trial judge noted at the hearing on respondent's motion that it had been the intent of the court that the original order granting summary judgment be a final judgment. The trial judge recognized that there was a technical defect in the original judgment which, in the opinion of the trial judge, was the type of "irregularity which our Court of Appeals would overlook." The trial judge suggested that the mistake was "obviously non-substantive and without any real significance," and noted that it was aware of "cases in which our Court of Appeals has overlooked that kind of omission." Nevertheless, because Martillaro was challenging the validity of the California judgment in Nevada, the trial judge stated his intention to enter a judgment that would correct any technical problem, as follows:
Look, I am going to enter the document which is a judgment. There is not going to be any mistake and nobody is going to be in a position to tell the court in Nevada that there is no judgment in this case. There is going to be a judgment when you walk out of this courtroom this morning.
On May 15, 1992, the California Superior Court entered a summary judgment and award of attorney's fees against Martillaro, and declared that the judgment be entered nunc pro tunc to December 11, 1991, the date of the original, arguably technically deficient summary judgment. On May 27, 1992, respondents filed an exemplified copy of the new California judgment in the district court.
On July 13, 1992, Martillaro filed in district court a motion to vacate the judgment of the California Superior Court pursuant to NRCP 60(b). Martillaro argued that the California judgment had been entered as a result of fraud on the California court and that the California court lacked jurisdiction to enter the judgment nunc pro tunc.
On July 30, 1992, the district court denied Martillaro's motion to strike the notice of filing of foreign judgment. Martillaro filed a notice of appeal from that order on August 17, 1992. On September 3, 1992, the district court denied Martillaro's motion to vacate the foreign judgment. Martillaro filed a notice of appeal from that order on September 8, 1992. Both appeals were filed in this court under the Docket No. 23505. On September 9, 1992, this court dismissed Martillaro's appeal from the order denying the motion to strike for lack of an appealable determination. We allowed Martillaro's appeal from the denial of the motion to vacate to proceed. See Holiday Inn v. Barnett, 103 Nev. 60, 732 P.2d 1376 (1987) (order denying motion for relief from judgment pursuant to NRCP 60(b) is independently appealable). Finally, *981 on December 10, 1992, Martillaro filed in this court a petition for a writ of mandamus or prohibition, which was docketed as No. 23842.

DISCUSSION
A writ of mandamus will not issue if the petitioner has a plain, speedy and adequate remedy in the ordinary course of law. NRS 34.170; see Heilig v. Christensen, 91 Nev. 120, 532 P.2d 267 (1975), cert. denied, 423 U.S. 1055, 96 S.Ct. 787, 46 L.Ed.2d 645 (1976). The same is true of a writ of prohibition. NRS 34.330.
In this case, Martillaro's appeal from the district court's order denying his motion to vacate the foreign judgment is an adequate remedy in the ordinary course of the law. Thus, we deny Martillaro's petition for a writ of mandamus or prohibition in Docket No. 23842. The arguments tendered in support of that petition, however, may be reviewed in the context of Martillaro's appeal in Docket No. 23505.
Martillaro argues that the district court should have granted him relief from the foreign judgment because the first document filed by respondents in this state, the order of the California Superior Court awarding attorney's fees to respondents, was not a judgment under California law. Martillaro further argues that the later nunc pro tunc judgment of the California trial court is ineffective because, according to Martillaro, the California court was without jurisdiction to enter that order. We disagree.
On appeal, the California Court of Appeals affirmed in all respects the initial order granting summary judgment, the order for attorney's fees, and the subsequent nunc pro tunc judgment of the California trial court. Mitchell v. Martillaro, Nos. A056582, A057354 & A058331, slip op. (Cal.Ct.App. June 10, 1993) (not for publication). Thus, the question of whether the judgment at issue is enforceable in California has been authoritatively answered, and that question is not open to this court.
Martillaro argues, nevertheless, that this court should not enforce the California judgment in Nevada because of the alleged irregularities in the commencement of the proceedings in this state. Specifically, Martillaro argues that the initial affidavit in support of the original order awarding attorney's fees was statutorily defective, and that the defect that the original order was not an enforceable judgment could not be cured by the subsequently entered judgment. Martillaro argues that respondents should be required to begin their action on the foreign judgment anew.
Initially, we note that Martillaro's repeated assertion that respondents and the California trial court conceded that the original order was not an enforceable judgment under California law is repelled by the record. Neither respondents nor the California trial court ever conceded that the initial order of the California court was not an enforceable judgment under California law; indeed, the trial judge stated his express belief that the initial order was enforceable as a judgment without modification. Nevertheless, respondents and the California court recognized that the order was possibly subject to challenge due to a purely clerical error, which the California court corrected nunc pro tunc. The California Court of Appeals determined that the trial court acted properly in so doing. Thus, Martillaro's argument that respondents are attempting to enforce a non-judgment in this state lacks merit.[3]
*982 Even if we were to assume, however, for the sake of argument, that there were some merit to Martillaro's challenge to the enforceability of the original California order, it would not be wise for this court to conclude at this time that respondents' present California judgment, which has been affirmed by the California Court of Appeals, cannot now be enforced because of an alleged technical violation of the Uniform Enforcement of Foreign Judgments Act.
"The full faith and credit clause of the United States Constitution requires that a final judgment entered in a sister state must [sic] be respected by the courts of this state absent a showing of fraud, lack of due process or lack of jurisdiction in the rendering state." Rosenstein v. Steele, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987). Martillaro does not argue in this court, nor do the facts suggest, that the California judgment was procured by fraud on the California courts. Further, the record demonstrates that Martillaro was not deprived of due process in the California proceedings; indeed, the process spanned several years in that state. Finally, Martillaro has not argued, nor could he, that the California courts lacked subject-matter or personal jurisdiction over the controversy at issue. Martillaro merely argues at this point that based on alleged technical deficiencies in the pleadings, respondents should be forced to commence a new, independent action in this state to enforce their judgment. To so require would result in the complete waste of scarce judicial resources.
We conclude, therefore, that the district court properly denied Martillaro's motion for relief from the foreign judgment, and we affirm in all respects the order of the district court.
SPRINGER, Justice, dissenting:
I dissent because the Mitchells have not as yet caused an "exemplified copy of [a] foreign judgment ... [to be] filed with the clerk of [a] district court of this state." NRS 17.350. They are not entitled, therefore, to have a writ of execution issued by one of our courts.
The Mitchells' Nevada counsel insists that the California order awarding attorney's fees, that was signed on February 14, 1992, and filed on February 18, 1992, is a judgment that is entitled to enforcement as a foreign judgment under NRS 17.350. The Mitchells filed an exemplified copy of this February 1992 order with the clerk of the district court and now seek to have that order enforced by our courts as though it were a final judgment.
As I read the Mitchells' position as it is expressed throughout this appeal, they rely on the February 1992 order as the sole documentary basis for justifying the execution proceedings which they have instituted in the district court. The February 1992 order is either a final judgment, or it is not. If it is not a final judgment, then it is not entitled to be enforced in this state. To me the February order clearly is not a final judgment and clearly is not entitled to enforcement by the courts of this state.
The first problem with the February 1992 order is that it was entered as an ancillary order and is dependent entirely, for its vitality as a judicial instrument, upon an order issued in California in December of 1991 allowing summary judgment to be issued. On December 11, 1991, the California Superior Court issued an "order" (not a "judgment") in which the court ruled that "no triable issue of fact exists" and that "summary judgment for plaintiffs against defendant Carl Martillaro for ... $28,246.21 may be entered." As far as I can tell, the actual summary judgment was never entered in accordance with this order. The December 11, 1991, order that summary judgment "may be entered" also provided that the plaintiffs, as prevailing parties, were authorized to move the court for attorney's fees and costs in accordance with the California Civil Code, Section 1717 (West 1985). Without ever reducing the December 1991 order to judgment and after discharge of the debt adjudicated in that order, the Mitchells moved the court for attorney's fees. It seems to me that under these circumstances, the February 1992 order was a pre-judgment order rather than a post-judgment order; and, as such, it is clearly not the kind of final judgment that Nevada is required to honor and enforce under the United States Constitution. The Mitchells could not very well file in Nevada *983 an authenticated copy of a summary judgment upon which the ancillary attorney's fee order was necessarily based because, when these proceedings were instituted in Nevada, there was no supporting summary judgment recorded in California. There was no summary judgment against Martillaro entered in California which could be filed in Nevada. In February 1992, when this matter was instituted in Nevada, there was in existence in California no judgment against Martillaro, only an "Order Granting Summary Judgment for Plaintiff and Against Defendant Carl Martillaro," in which the California trial court ordered that judgment against Martillaro "may be entered." (Emphasis added.) In California, "an order granting summary judgment is merely a non-appealable preliminary order" and is not a final judgment. Saunders v. New Capital for Small Businesses, Inc., 231 Cal.App.2d 324, 41 Cal.Rptr. 703, 705 (1964); Cal.Civ.Pro.Code § 437c(j) (West 1994). Martillaro insists throughout these proceedings that there can be no valid judgment for attorney's fees (and perhaps not even a valid order awarding attorney's fees) absent the entry of the final summary judgment pursuant to the December 1991 court order that judgment may be entered. I agree. At the time the February 1992 order for attorney's fees was issued by the California Superior Court, there was no summary judgment in California to support what otherwise might have been a post-judgment order for fees and costs.
Beyond the absence of a supporting summary judgment in California, there are other persuasive reasons why the February 1992 order is not entitled to be enforced as a final judgment in Nevada. "The full faith and credit clause of the United States Constitution requires that final judgment entered in a sister state must be respected by the courts of this state...." Rosenstein v. Steele, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987) (emphasis added). "A judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition." Restatement (Second) of Conflicts § 107 (1971) (emphasis added). There are a number of reasons why the February 1992 order cannot be considered to be final. First, neither the trial judge nor the Mitchells' California counsel "recognized" the February 1992 order as being a final judgment in California, "the state of rendition." This tells me that the Nevada courts should not be compelled to recognize the California order as a judgment when the rendering judge and the Mitchells' counsel do not recognize the order to be a final judgment.
In May of 1992, the Mitchells filed a Motion for Judgment. One would ordinarily assume that it would not be necessary to file such a motion for judgment if there were, in fact, already a valid, final judgment already in existence. On May 4, 1992, in support of the Mitchells' motion for judgment, one of the Mitchells' California lawyers, Robert Schuchardt, filed a formal "declaration" with the California court in which he attested that, as of May 4, 1992, "[n]o formal document entitled "judgment" has been signed by this court." Another of the Mitchells' California lawyers, William Weiner, filed a similar declaration in support of the Mitchells' motion for judgment in which the lawyer "declare[d] under penalty of perjury under the laws of the State of California" as follows:
"On April 7, 1992 I appeared as counsel for [the Mitchells'] ex parte application for order clarifying court's intent. At that time, Judge Pollak [the judge who signed the February, 1992 order in question] and his clerk indicated that neither could find a document in the file which was a judgment."
The fact that the Mitchells' California counsel swore under oath that there was no judgment, coupled with the fact that the California lawyers found it necessary at all to move the court for a final judgment, is certainly a persuasive, if not conclusive, indication that as of May of 1992 there was no final, enforceable judgment against Martillaro existent in California. I happen to agree with the lawyers' sworn statements and with the judge who issued the critical February 1992 order that there was no "document in the file which was a judgment."
Furthermore, the California Code of Civil Procedure provides that "[a] judgment is the final determination of the rights of the parties *984 in an action or proceeding." Cal.Civ.Pro. Code § 577 (West 1976) (emphasis added). Quite plainly, even if summary judgment had been entered in this case, the subject February 1992 order was not a "final determination of the rights of the parties" with respect to attorney's fees, for the order itself provides: "5. The court retains jurisdiction to award additional attorneys fees, costs and sanctions should the circumstances warrant." This does not look like a "final judgment" to me. The order awarding $88,000.00 in attorney's fees might very well have eventually become appealable under California Civil Procedure Code section 904.1 (West 1980) (if the summary judgment had been properly entered before issuance of the attorney's fees order), but this alone does not give to the order the finality necessary for recognition in another state. Presumably the issue of attorney's fees attendant to the collection of $25,000.00 had not been finally resolved by the California trial court or the court would not have retained jurisdiction for the purpose of entitling it to "award additional attorneys fees, costs and sanctions as the circumstances warrant." If the Mitchells want Nevada to enforce their California judgment, let them come here with a final judgment and not one subject to an "additional" award.
Finally, as I have previously suggested, California does not consider an order granting summary judgment to be a final judgment. See, e.g., Avila v. Standard Oil Co., 167 Cal.App.3d 441, 213 Cal.Rptr. 314, 317 (1985) ("[a]n order granting a motion for summary judgment is a non appealable preliminary order"). This position was stated most forcefully in the recent California Court of Appeal's case, Currie v. O'Connor Hospital, 93 Daily Journal, D.A.R. 16192 (December 22, 1993). Although the Currie court observed that this rule often has harsh results, it went on to hold that "[t]he proper role of an appellate court is to adhere to and apply Code of Civil Procedure 904.1, not to devise and employ strategies for its wholesale avoidance." Currie, 93 Daily Journal, D.A.R. at 16193 (quoting Modica v. Merin, 234 Cal.App.3d 1072, 285 Cal.Rptr. 673, 675 (1991).
Apparently, on May 15, 1992, the California court did get around to entering a final judgment which embodies the fee award against Martillaro. I know this because the Mitchells' counsel has attached an authenticated copy of this document to one of its motions. In their Response to Addendum to Motion to Strike Filing of Foreign Judgment, filed in the district court, the Mitchells informed the court that they had finally obtained a final foreign judgment and that they were going to present the judgment for enforcement in Nevada. The Mitchells advised the district court that they had ordered an exemplified copy of the (May 21, 1992) judgment and that "upon receipt, plaintiffs will request to amend their original notice of filing foreign judgment, substituting the new complete judgment.... Upon the filing the complete foreign judgment, discussion of the original notice of filing [of the order granting the motion for attorney's fees] will be unnecessary." To me this is a clear recognition by the Mitchells that there was something wrong, and that if they expected Nevada to enforce a California judgment, they had better come here with a final and "complete foreign judgment." For some reason, however, the Mitchells' Nevada lawyer retreated from her announced plan to abandon the Mitchells' attempt to enforce a non-final order rather than a "complete foreign judgment" by "substituting" for the order then on file in the district court an authenticated final judgment from California. For reasons that escape me, the Mitchells decided not to pursue enforcement of the new complete judgment and put all of their money on the February 1992 order. The record is very clear that the Mitchells are not seeking to enforce the May judgment and that they are, instead, interested only in trying to pursue enforcement of the non-final February 1992 order.[1]
*985 Having stated my case for denying to the Mitchells' enforcement of their California order of February, 1992, I find it useful to go on now to discuss the basic nature of this case. This case is all about attorney's fees, and only attorney's fees. The case begins with Martillaro's making the mistake of signing on, some ten years ago, as an indemnitor or guarantor in a mining deal in California. In 1987, the Mitchells sued him on his agreement claiming that Martillaro owed them some $25,000.00 in attorney's fees that they claimed to have incurred as part of the mining deal. The trial court decided that Martillaro had no legal defense to the attorney's fee claim and ordered that summary judgment "may be entered" against him. Within a few weeks after the court authorized summary judgment to be entered, and before summary judgment actually was entered, the amount claimed by the Mitchells, $28,246.21, was paid in full. Case closed? Not quite.
Unimaginably, the Mitchells, taking advantage of a provision in the order allowing for an award of attorney's fees and costs, filed a motion seeking attorney's fees in the sum of $195,042.00, for the yeoman service rendered by their fine lawyers in obtaining a summary judgment in a $25,000.00 collection suit. Martillaro argued, of course, that the amount ordered to be paid had already been paid and that $195,000.00 was a bit much to be claimed by any lawyers for collecting on a $25,000.00 claim. The judge was merciful. Given that the $28,246.21 due to the Mitchells had already been paid, the judge decided that $195,000.00 was too much and awarded a mere $88,151.25 in attorney's fees.
In granting the Mitchells' motion for attorney's fees, the trial judge made a remark that I find to be of great interest: "First of all, unquestionably, this situation is really appalling. And anybody from outside the legal system who looked at what happened here, or within the legal system, hopefully, is going to be disturbed to see this kind of situation."
I must agree that an award of an $88,000.00 attorney fee on a $25,000.00 collection that had already been paid was indeed appalling, but, that aside, there appears to be no question but that Judge Pollak did not consider his February 1992 order to be a judgment and that the judge did not intend his ruling on the Mitchells' motion for attorney's fees to be a final judgment. Judge Pollak made it clear that he did not believe that there was a judgment in effect in May of 1992 when he attempted to transmute his February 1992 order into a true judgment by adding to the printed May 15, 1992, judgment, in his own handwriting, the order that the clerk was to enter judgment, "nunc pro tunc as of December 11, 1991." This handwritten addendum clearly demonstrates that the judge did not believe that there was a final judgment in effect between December 11, 1991, and May 15, 1992; otherwise, the judge would have had no need to try to "back-date" the May 15 judgment to the date of the order that summary judgment "may be entered." I do not know what other reason that Judge Pollak might have had for inserting the mentioned hand-written addendum into the prepared, printed order; however, I might speculate that the judge was trying, somehow, to breathe life into the February 1992 document that the Mitchells are trying to foist as a final judgment. Even if Judge Pollak had the authority to transport the effective date of his May 15, 1992, order into the past (something that I would challenge were it necessary), no one has seriously argued that the February 18, 1992, order filed with the Nevada district court on March 13, 1992, was magically transformed *986 into the judgment that it was not, merely by virtue of Judge Pollak's handwritten addendum.
Until such time as the Mitchells file the May 15, 1992, judgment with the clerk, and "amend their original notice," as they said they were going to do, and as is required by NRS 17.350, there is and can be no foreign judgment for the courts of this state to enforce.[2]
Finally, if the Mitchells ever come before this court with a Nevada judgment based on an authenticated copy of a final judgment, I would still have a serious question in my mind whether this state should enforce an attorney fee judgment of almost $90,000.00 on a $28,000.00 collection judgment. To my mind, such an award might very well be violative of the public policy of this state. Obviously, there is no need for my discussing the point any further at this juncture.
NOTES
[1] Carl Frank Martillaro died during the pendency of this appeal and this petition for a writ. Alan G. Karow, the administrator of his estate, has been substituted into these consolidated cases in his place. For purposes of clarity, we will refer to the appellant in this opinion as "Martillaro."
[2] Although the original judgment was in the amount of $28,246.21, the award of attorney's fees against Martillaro alone was $88,151.25. In affirming this award of attorney's fees, the California Court of Appeals noted that it was "only one-half the attorney fees prayed for." Mitchell v. Martillaro, Nos. A056582, A057354 & A058331, slip op. at 10 (Cal.Ct.App. June 10, 1993) (not for publication). That court also quoted the trial court as having found that this matter "might have been handled fairly expeditiously [but that] every step of the way was a huge battle." The trial court noted further that Martillaro took "an absolute stonewall position every stage of the way," and that Martillaro was never willing to resolve the case on a reasonable basis. The trial court also found that "the responsibility for [the delay] is not [respondents']." Id. at 9.
[3] The dissent makes much of the fact that respondents have not filed a new notice of filing of foreign judgment in the district court with respect to the California court's nunc pro tunc judgment, and insists, therefore, that respondents are attempting only to enforce the original order for attorney's fees, which the dissent believes to be unenforceable. We view this as a technical defect, at most. It is clear from the record that respondents are attempting to enforce the original order awarding attorney's fees, as construed by the California court in its amended judgment. Exemplified copies of both documents appear in the record, and Martillaro has been provided with ample notice of the judgment against which he must defend. The amount of the judgment is ascertained with certainty, and respondents' right to recover the judgment cannot be disputed. Any technical defect in the form of the notice of filing of foreign judgment is of no significant consequence at this stage of this proceeding.
[1] There can be no doubt that we are dealing here with the Mitchells' attempt to enforce the original February 18, 1992, California Superior Court order granting the attorney's fee motion. This is the order that was filed in our district court on March 13, 1992. The Mitchells' counsel insists throughout the documents filed in the district court that it is the February 18, 1992, order, and not the May 21, 1992, judgment, that she is seeking to enforce in the present proceedings. For example, in her opposition to Martillaro's Motion to Vacate, filed in July, 1992, well after the May judgment had been entered, she makes it clear that the Mitchells were continuing to base their claim on the original order and not the judgment. Even in her answering brief counsel persists in this course. The first main heading of the brief reads: "The February 18, 1992 Order Granting Attorney's Fees Against Defendants Carl Martillaro and Eugene Chaney Is a `Judgment' Under Nevada and California Law, for Purposes of the Uniform Act and under the Provisions for Full Faith and Credit under the U.S. Constitution, Article IV, § 1." (Emphasis added.) The Mitchells have made their position most clear, but, unfortunately for the Mitchells, the February 18, 1992, California order is clearly unenforceable and the March 13, 1992, California judgment, if properly authenticated, may very well be technically enforceable (aside from public policy considerations which I will discuss below).
[2] It would not appear necessary to cite case authority for the proposition that the Mitchells are trying to enforce a nonexistent judgment, but I offer, in point, the case of Griggs v. Gibson, 754 P.2d 783 (Colo.Ct.App.1988). When the judgment creditor in that case sought enforcement of a foreign judgment, he failed at the time of initiating the proceedings to file an authenticated copy of the foreign judgment. At the hearing on the judgment, the debtor complained that the file did not contain an authenticated copy of the foreign judgment; whereupon, the creditor produced such a copy and asked that the court get on with it, which the court did. On appeal, the debtor's argument was simply that "since plaintiff failed to file an authenticated copy of the foreign judgment in the first instance, the district court lacked authority to take any steps to enforce that judgment." Id. at 785. This situation is exactly like the present case except that instead of failing to file any authenticated judgment, the Mitchells failed to file an authenticated copy of an enforceable, final judgment. The appellate court in Griggs quite properly held that "the filing of the authenticated copy of the foreign judgment is not a mere administrative step that may be waived; it is, rather, the equivalent of the entry of an original judgment by the domestic court and, thus, is a necessary condition precedent to the domestic enforcement of that judgment. Id. at 785. The Mitchells failed here by failing to file a final judgment. They might just as well have filed a will with the court as the February 1992 order.