[No. 272-40713-1.    Division One.    April 20, 1970.]
Panel 1

THE BROWER COMPANY, *Plaintiff*, v. JACK M. GARRISON *et al.*, *Respondents*.

KENWORTH NORTHWEST SALES AND SERVICE, INC., *Respondent*, v. HENRY W. BATTS *et al.*, *Appellants*.

*Ferguson & Burdell, W. Wesselhoeft,* and *William E. Kuhn,* for appellants.

*Bogle, Gates, Dobrin, Wakefield & Long* and *Don Paul Badgley,* for respondent Kenworth Northwest Sales and Service, Inc.

*Reaugh, Hart, Allison, Prescott & Davis* and *Keith R. Baldwin,* for respondent United Plumbing and Heating, Inc.

SWANSON, J.—Henry W. Batts and wife, doing business as Batts Construction Co. (Batts), as general contractor, agreed to construct a truck sales and service building for Kenworth Northwest Sales & Service, Inc. (Kenworth). After construction of the facility was completed, The Brower Co., a subcontractor, brought a lien foreclosure action against Kenworth, the owner of the property, Batts, the general contractor, and other subcontractors, including United Plumbing & Heating, Inc. (United). United cross claimed to foreclose its lien claim for an alleged balance due on its subcontract. Kenworth then brought a separate action against Batts and its surety. It sought damages in excess of $425,000 claiming poor construction, real estate depreciation, and delayed performance damages. Batts counterclaimed seeking foreclosure of its lien claim of $81,209.01. These actions were consolidated for trial. The subcontractors' lien claims were settled during the course of the trial, and none are appealed from. United is the only subcontractor involved in an issue on this appeal. Batts received a judgment against Kenworth for $81,209.01, less a setoff to Kenworth for damages for deficiencies in the construction of the building and for loss of profits caused by Batts' failure to substantially complete the building within a reasonable time. The setoff totaled $79,811.50, thus netting Batts only $1,397.51. Batts has not appealed from that part of the judgment relating to deficiencies in construction but appeals from certain of the amounts allowed Kenworth as a setoff and the insufficiency of a setoff awarded Batts against United.

Four separate areas of dispute are raised by the appeal and cross-appeal, as follows:

(1) The award of a setoff to Kenworth of approximately $14,000 against Batts for loss of profit caused by Batts' delay in completing the building within a reasonable time.

(2) The award of a setoff to Batts of $2,900 against United, the amount being based upon the portion of the responsibility the trial court felt United had in causing the delay in the completion of the building. Batts claims the amount set off should have been $9,600.

(3) The award to Batts of a $1,500 attorneys' fee. Respondent Kenworth cross-appeals and claims that Batts did not in fact receive a net judgment and, even if it did, the court abused its discretion in awarding an attorneys' fee larger than the amount of the net judgment.

(4) The rejection of Batts' claim for a 15 per cent markup on all change orders, including work performed by the subcontractors wherein a 15 per cent markup was included within their change order figure. This involves a claim of approximately $5,577.

To place these questions in their proper perspective necessitates a somewhat detailed account of the transaction.

Kenworth was incorporated when Kenworth Motor Truck Corporation announced it was going to separate the sales and service of trucks in the Seattle area from its manufacturing operation. Kenworth was awarded the distributorship and, in preparation for taking over this business operation, had certain plans and specifications prepared for the construction of a sales and service building. Kenworth issued a call for bids which were to be tendered on forms supplied by its architect. The instructions to bidders said that "consideration will be given to both the dollar amount and the completion time." The bid form contained a clause reading, "The Undersigned, agrees if awarded the contract for the work, to substantially complete the work within ............ consecutive calendar days after notice to proceed is received." The specifications issued to

prospective contractors provided that the general conditions of the contract were to be controlled by The American Institute of Architects' document A-201.[1] The architect also added supplementary conditions which were to control when in conflict with the general conditions. The appellant Batts submitted the winning bid and in it agreed to substantially complete the construction within 160 consecutive calendar days after receiving notice to proceed.

The owner-contractor agreement contained a specific article dealing with the time of completion, but no completion time was inserted. The article was left blank. The court found the contract did not provide for a fixed completion date. Finding 7. The trial court further determined, pursuant to the authority of *Robinson v. Davis*, 158 Wash. 556, 559, 291 P. 711 (1930), that where no time of performance is specifically agreed upon, a reasonable time for performance under the circumstances will be by the law presumed as intended by the parties to the contract. The court then stated in finding 9:

> Under the circumstances which prevailed at the time of the execution of the Contract and taking into consideration all the evidence regarding the conditions and events which occurred during the performance of the contract, a reasonable time by which Batts should have substantially completed the facility was February 15, 1967.

Thus, the initial question we must review is whether the construction contract contained an established completion date. Batts bases its argument that the contract did contain a fixed completion date on the terms of the accepted bid. It contends that the accepted bid which is described as a contract document in the contract itself must be a part of the contract. The contract's supplementary condition article 1 (a) modifying the general conditions states:

> "Contract Documents" consist of: (A) Accepted Bid, (B) General Conditions, (C) Supplementary General Conditions, (D) Agreement, (E) Specifications, and

---

[1] This document is a copyrighted, printed form entitled, "The General Conditions of the Contract for the Construction of Buildings."

(F) Drawings. Items (B) to (F) inclusive shall form the contract.

■ Batts argues that if the accepted bid is a contract document it must be part of the contract, and since the bid sets forth the specified number of days for completion, the court erred in disregarding that portion of the contract. In making this argument, Batts ignores the sequence of events. The accepted bid did, indeed, specify 160 days as the time within which the work was to be completed; however, the agreement contained a specific article dealing with time of completion:

Article 2. Time of Completion

The work to be performed under this Contract shall be commenced and completed as follows:

However, nothing was either typed or written below this heading. But the contract itself provides the answer to the intention of the parties, for the contract's supplementary condition 1 (a), *supra,* indicates that the accepted bid, though a contract document, is not part of the contract. This is a clear indication that the parties intended that the accepted bid should merge into the contract and lose its separate existence apart from the agreement itself. The Supreme Court discussed the question of merger in *Dix Steel Co. v. Miles Constr., Inc.,* 74 Wn.2d 114, 119, 443 P.2d 532 (1968):

As a general rule, preliminary negotiations between a subcontractor bidder and a general contractor merge as a matter of law in the formal written contract between them. . . . It all depends upon the parties' intentions, and these intentions, more often than not, are facts to be ascertained by the trial court or jury.

■ The trial court found that the contract did not provide a fixed completion date. This finding is correct and is supported by substantial evidence. The legal conclusion to be drawn from this finding is that Batts and Kenworth did not agree on a certain date for completion; rather, they agreed that performance should be completed by a date

coextensive with a reasonable time. This conclusion is a presumption or fiction indulged in by the law to keep a contract from failing for lack of definiteness.

[When] no time of performance [is] specifically agreed upon, a reasonable time for performance, under the circumstances, will be by the law presumed as intended by the parties to the contract.

*Robinson v. Davis, supra* at 559. See also RCW 62A.2-309.

The court found that under the circumstances, February 15, 1967, was a reasonable time for completion. The finding is based on substantial evidence and will not be overruled. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). Having found a reasonable time, it is then presumed this is what the parties intended. And since this is what the parties intended, it then becomes a term of the contract just as surely as if it were written in by the parties. "Necessary implications are as much a part of an agreement as though the implied terms were plainly expressed." *Suess v. Heale,* 68 Wn.2d 962, 966, 416 P.2d 458 (1966).

Having determined the date the parties intended, the court then found that there was no meeting of the minds on the terms of the liquidated damages clause.[2] Finding 19.[3] The court also stated in finding 22:

It was intended by the parties that Art. 45 not be in effect unless a specified completion date was set forth in Art. 2 of Standard Form of Agreement (or elsewhere), which was not done.

In other words, the court said that a completion date was necessary before the liquidated damages clause could apply, but even if the date was supplied, the clause was still inoperative because it was not part of the contract.

---

[2]Article 45 states: "For each calendar day after the dates fixed for completion that the work remains uncompleted, the Contractor shall pay the Owner the Sum of $50.00 as fixed, agreed, liquidated damages, but not as a penalty."

[3]Finding 19 states: "There was no meeting of the minds of the parties regarding the terms of Article 45 of the Supplementary Conditions (hereinafter called 'Art. 45'). Art. 45 was prepared by the architect."

■ The rationale of finding 19 appears to be that since the architect prepared article 45, it was not a provision agreed on by the owner and contractor. Were this reasoning accepted, the law would have a difficult time sustaining form contracts. For example, is an insurance contract invalid because the insured and insuror do not discuss each clause? Manifestly not; an insurance policy is recognized as a contract of adhesion and treated accordingly. Is the entire contract involved here invalid because it was prepared by Kenworth's architect? We believe not. The architect was Kenworth's agent for the preparation of the contract. Kenworth is bound by its agent's knowledge. *Rocky Mt. Fire & Cas. Co. v. Rose,* 62 Wn.2d 896, 385 P.2d 45 (1963). And the evidence can only support the conclusion that Batts was aware of the provision and knowledgeable as to its operation. The testimony of Mr. Moeck, Batts' estimator, clearly shows article 45 was seriously considered in preparing the bid:

Q. Now, in preparing an estimate and arriving at your estimated figure, is the presence of a liquidated damage clause customarily taken into account by the estimator? A. It is very important. Q. Why? A. In many cases it can amount to a huge sum of money. Q. And the fact that it might amount to a huge sum of money, what effect has that got on the figure at which you might arrive? A. If we felt the time specified for the completion of a job was not long enough, we would have to take this into consideration in our overall bid proposal amount.

Henry Batts, president of Batts, also testified as to the importance of this clause:

Q. With respect to the contract documents themselves did you note in connection with your bid on the job there was a liquidated damage provision in the contract? A. Yes. Q. Now, in connection with the figure at which you bid the job, did you take that into consideration. That is, the existence of a liquidated damage provision? A. Yes. Q. For what reason did you take that into consideration? A. Well, I think the reason to me is rather obvious. Q. Tell them to the Court, please. A. Well, I guess the closest analogy to that would be it is an owner's means of collecting damages in case the contractor does not com-

plete the job within the specified time. It is money. That is the point I am trying to get at.

We hold article 45 was an agreed-upon term of the contract.

The liquidated damage clause being part of the contract, is finding 22, *supra,* correct in stating there was no date from which it could operate? Viewed in light of the court's holding that February 15 was the completion date intended by the parties, this finding is a legal non sequitur. There is an implied completion date, intended by the parties, from which article 45 may operate. To hold otherwise is equivalent to saying there is a date intended by the parties from which Kenworth will suffer damage, but this date is not to apply to the measure of damages selected by the parties. If the law must indulge in the fiction that a reasonable date will be imputed to the agreement when none is specified, the date must be reasonable for all parties and for all purposes contemplated in the contract.

> The policy of the law is to supply in contracts what is presumed to have been inadvertently omitted or to have been deemed perfectly obvious by the parties, the parties being supposed to have made those stipulations which as honest, fair, and just men they ought to have made. Therefore, whatever may fairly be implied from the terms or nature of an instrument is, in the eyes of the law, contained in it. . . . [W]hat is implied in law need not be expressed. 17 Am. Jur. 2d *Contracts* § 255 at 649 (1964).

*Suess v. Heale, supra* at 967.

We therefore hold that February 15, 1967, a reasonable date for completion, is the date from which the liquidated damage provision applies.

Given the inclusion of article 45 in the contract, is that clause binding and applicable to the parties? The court concluded not, on the basis of findings 20 and 21. These findings state respectively:

> At the time the contract was entered into, the sum of $50 per day as provided for in Art. 45 bore no reasonable relationship to the amount of damages reasonably to be

anticipated in the event of Batts' failure to substantially complete construction of the facility within a reasonable time and was not then a reasonable forecast of just compensation for such damages.

The sum of $50 per day in fact bore no reasonable relationship to the damages actually suffered by Kenworth as the result of Batts' breach of contract in failing to substantially complete construction of the facility within a reasonable time.

On the basis of these findings, the court concluded:

Art. 45 did not become a part of the agreement between Batts and Kenworth. Assuming arguendo, that Art. 45 was a part of the contract, the court concludes that it is unenforceable and should not be enforced.

Conclusion 3.

The propriety of this conclusion must be judged against the rules of law on which it is based. In Washington, a provision for liquidated damages will be upheld unless it is a penalty or otherwise unlawful. *Jenson v. Richens*, 74 Wn.2d 41, 442 P.2d 636 (1968). Indeed, the policy of Washington law is to favor liquidated damages. *Management, Inc. v. Schassberger*, 39 Wn.2d 321, 235 P.2d 293 (1951). Given this favored position, a liquidated damage clause will be construed as a penalty only rarely and when the facts and circumstances of a particular case compel that result.

A liquidated damage clause must meet certain preconditions. The amount of damages stipulated must be a reasonable estimation of compensation for the damages caused by the contractual breach. The scope of the harm caused by the breach must be difficult of accurate estimation. A liquidated damage clause becomes a penalty when:

a sum [is] inserted in a contract, not as the measure of compensation for its breach, but rather as a punishment for default, or by way of security for actual damages which may be sustained by reason of nonperformance, and it involves the idea of punishment. It is the payment of a stipulated sum on breach of contract, irrespective of the damage sustained. Its essence is a payment of money stipulated as in terrorem of the offending party, while

the essence of liquidated damages is a genuine convenanted pre-estimate of damages."

15 Am. Jur. *Damages* § 241 at 672, cited in *Management, Inc. v. Schassberger, supra* at 326. This test is especially well stated as to construction contracts. A liquidated damage clause becomes a penalty when the amount fixed has an in terrorem effect of inducing performance rather than compensating loss.

The trial court found that article 45 did not reach the status of a liquidated damage clause. Finding 20 is based on the criterion set out above *i.e.*, the damages stipulated must be reasonably related to the damages anticipated. This court can uphold finding 20 only if we can say that at the time of contracting, the amount stipulated bore no reasonable relationship to the amount of damages anticipated from delay in construction. If there is any reasonable relationship, the clause must stand.

From the testimony of Kenworth's architect, it appears that he may not have had complete knowledge as to the damages to be anticipated when the bid form was submitted to Batts:

Q. Mr. Garrison, in substance, told you that his requirements of moving into that building on December 1 were inflexible, is that not so? A. No, he didn't tell me that they were inflexible. Q. Did he tell you he was going to move the service department—that he had to move the service department out of Kenworth Motor and into the new building by December 1? A. Yes. Q. Did he tell you that before the liquidated damage clause? A. No.

The test of anticipated damages looks to the time of contracting, not to some later time. This lack of information must be attributed to Kenworth's president, Garrison, and Kenworth will not be allowed to benefit by Garrison's lack of diligence.

Given the architect's knowledge, does the amount stipulated meet the test? The architect knew Kenworth's needs and expectations regarding the use of the building at the time of contracting. He determined the amount of liquidated damages after considering the size and nature of the

job. He said $50 "represents a fair amount of interest on the money that ............ per day that is lost during any one day of extensive time." He knew the purpose for which the building would be used.

This testimony is alone sufficient to compel a finding of reasonableness. The parties were all experienced businessmen. The amount was selected after considering relevant factors at the time of contracting. Moreover, this is not the typical case concerning a liquidated damages clause. Here, the author and beneficiary of the clause, not the person liable, is asserting its penal nature. Since Kenworth could have stipulated for a higher rate, its position is untenable. The amount stipulated was reasonable and was not a penalty since it was an amount which would compensate for delay, not an in terrorem amount to induce compliance.

Finding 21 states that the amount of damages stipulated was not reasonably related to the damages actually suffered. Kenworth seeks to support this finding on the basis of *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 594, 446 P.2d 200 (1968), where the court stated, "A provision in a contract which bears no reasonable relation to actual damages will be construed as a penalty." There is generalized support for this statement in relation to liquidated damages. 22 Am. Jur. 2d *Damages* § 221 (1965); 25 C.J.S. *Damages* § 108 at 1056 (1966). But, we believe, this statement taken out of the immediate context of the case in which it is found does not support Kenworth's position.

In *Northwest Collectors, Inc.,* the acceleration clause in a lease of a tractor which required the lessee to pay the full contract balance (it was conceded that the total amount to be paid under the terms of the lease equalled the purchase price of the tractor, plus financing charges) in advance, was a penalty and not compensatory damages. Looking at the economic utility of the tractor, the court said, "A more reasonable procedure would have been to attempt to mitigate damages by leasing it or selling it." 74 Wn.2d at 593. Such action, the court said, "reflected a more realistic approach to the question of actual damages." *Supra* at 594.

The damages which would have resulted by application of the acceleration clause would permit the lessor to recover the full cost of the tractor, plus financing charges, and by holding the tractor unused for the 3 years remaining of the lease would allow its release in realization of further income from it. *Northwest Collectors, Inc.,* applies the principle that a stipulated sum is for liquidated damages, only when the anticipated damages are difficult to ascertain because of their indefiniteness or uncertainty. In *Northwest Collectors, Inc.,* the anticipated damages were not difficult to ascertain, because the contract itself provided a measure of actual damages.[4] In the case sub judice, the anticipated damages are by their very nature difficult to ascertain. Thus, this case is controlled by different principles.

If the rationale of *Northwest Collectors, Inc.,* is breach and repudiation, as suggested in the dissent, the case is even more inapposite here. Batts did not repudiate the contract; the full performance was rendered, albeit late. Kenworth seeks damages for a delayed performance, not for an unrendered performance. Rather, we believe:

> There is no reason why persons, competent and free to contract, may not agree upon this subject (liquidated damages) as fully as upon any other, or why their agreement when fairly and understandingly entered into with a view to just compensation for the anticipated loss, should not be enforced.

*Underwood v. Sterner,* 63 Wn.2d 360, 366, 387 P.2d 366 (1963). Kenworth drafted the contract and stood to benefit through article 45. It, alone, was in the best position to estimate the potential harm to be caused by delay and the actual or compensatory damages needed to nullify that harm. Kenworth will not be allowed to claim greater compensatory damages.

---

[4]Contrast this holding with *Heath Northwest, Inc. v. Peterson,* 67 Wn.2d 582, 586, 408 P.2d 896 (1965), where the court said:

> In addition, appellant's contention that the contract provides for the payment of a penalty must fall for the reason that the record contains insufficient evidence from which respondent's actual damages could be found so as to allow a comparison with the alleged "penal" amount.

We thus hold that the measure of damages applied by the court was improper. Damages should be computed per the contract at the rate of $50 per day from February 15, 1967, until April 15, 1967, the date on which the court found the contract substantially completed.

The trial court awarded Batts $2,900 as a setoff against United. This amount is the sum of two separate items of damages: (1) $400 for work needed to balance the air ventilation system, and (2) $2,500 for delay caused by the unbalanced air ventilation system. Batts contends that the amount of setoff is too small if the ratio decidendi of the trial court is sustained. However, Batts concedes there would be no complaint as to the amount of the setoff should this court uphold the liquidated damages clause.

The court's oral decision and findings of fact show that the second item enumerated above was determined in proportion to the total amount of damages for delay awarded Kenworth. In view of our conclusion that the liquidated damages clause controls, we reverse this $2,500 setoff awarded Batts. On remand, United's contribution to the damages must be redetermined.

Kenworth's claim that Batts is not entitled to an attorneys' fee as a matter of law is likewise without merit. The matter is discretionary with the trial court. The trial lasted 21 days. Batts did realize a net judgment. The trial court did not abuse its discretion in awarding $1,500 as attorneys' fees.

The trial court correctly determined that Batts is not entitled to any markup on change orders to which the subcontractors who performed the work added a markup of at least 15 per cent. Article 15 of the supplementary conditions of the contract provides as follows:

Art. 15—Changes in the Work (Modify)

(A) Maximum of 15% for additions and minimum of 5% for deductions for *contractors allowance* for overhead and profit on all changes.

(Italics ours.) The trial court's conclusion that the maximum markup for overhead and profit on change orders is

15 per cent in the aggregate for both the general contractor and any subcontractors is based upon the reasonable construction of the contract.

The judgment of the trial court is affirmed in part, and reversed in part, and remanded with an order to modify the judgment consistent with this opinion. No party will be allowed attorneys' fees or costs except United.

JAMES, C. J., and FARRIS, J., concur.