[No. 240-41109-1.    Division One—Panel 1.    September 28, 1970.]

HELEN RODIN, *Respondent,* v. WORTH O'BEIRN *et al., Respondents,* SHORELINE SAVINGS & LOAN ASSOCIATION, *Appellant.*

*Richard C. Shanks,* for appellant.

*David Skellenger,* for respondent Rodin.

*Skeel, McKelvy, Henke, Evenson & Betts* and *W. E. Evenson,* for respondent Pioneer National Title Insurance Company.

JAMES, C. J.—Defendants O'Beirn, as sellers, and plaintiff Rodin, as purchaser, entered into a real estate contract on May 19, 1965. The principal balance of $16,500 was to be paid in monthly installments. On June 3, 1965, the O'Beirns conveyed their sellers' interest in the property to Shoreline Savings Association. Rodin was so notified by Shoreline and has paid to Shoreline all installments as they have become due. Pioneer National Title Insurance Company's

predecessor, Washington Title Insurance Company, insured Shoreline's title.

A slide substantially damaged the property in January of 1966. Thereafter, Rodin brought suit against the O'Beirns for damages, alleging fraudulent concealment of a serious defect in the property because of known unstable soil conditions. Rodin did not join Shoreline as a party to the action.

The trial in the damage suit resulted in the entry of judgment on May 23, 1967, in Rodin's favor in the sum of $12,388. The judgment additionally provides:

> Such judgment shall operate as an offset against and a reduction of that certain Real Estate Contract by and between Helen Carey [now Rodin] as purchaser and Worth and Mary Alyce O'Beirn as sellers which is recorded under Auditor's file No. 5886850, records of King County, covering the following described real estate: [Legal description omitted.] so that the principal balance thereof of $15,225.33 is reduced by the sum of $12,388.00 to a balance of $2,837.33.

The judgment in the damage action was not appealed.

On October 13, 1967, Rodin instituted this action asking for judgment "declaring and decreeing that the offset adjudged and decreed in [the damage action] operates as against defendant Shoreline Savings & Loan Association [sic], . . ." Rodin also named the O'Beirns as defendants, but sought no additional relief as against them.

Shoreline answered Rodin's complaint and asserted that because it had not been joined in the damage suit against the O'Beirns, relief against it should be denied "on the basis of estoppel, laches, release and waiver."

Shoreline joined Pioneer, seeking indemnity in the event of an adverse judgment. Shoreline's contention is that such a loss is covered by Pioneer's title insurance policy.

Shoreline additionally seeks a judgment against the O'Beirns for indemnity in the event that Rodin's judgment is affirmed.

Rodin's motion for summary judgment in her favor was

granted by Judge Walterskirchen. The judgment provides in part:

> 1. The judgment recovered by plaintiff Helen Rodin (then known as Helen Carey), in King County Superior Court Cause No. 657103 in the amount of $12,388.00 and costs, against Worth O'Beirn and Mary Alyce O'Beirn, his wife, is an offset against the balance due under that certain real estate contract by and between Helen Carey (now Rodin) and Worth and Mary Alyce O'Beirn, which Rodin) credit for such offset, effective December 6, 1968. contract is recorded under King County Auditor's Receiving No. 5886850.
>
> 2. Defendant Shoreline Savings & Loan Association [*sic*] is directed to give to plaintiff Helen Carey (now

Shoreline's countering motion for judgment of dismissal was denied.

Shoreline's motion for summary judgment against Pioneer was denied by Judge Roney, and Pioneer's countering motion for judgment of dismissal was granted.

Shoreline's motion for summary judgment of indemnity against the O'Beirns was denied by Judge Roney. The O'Beirns made no countering motion for dismissal.

Shoreline appeals from all adverse rulings.

As between Rodin and Shoreline, no issue of fact was raised by the pleadings and supporting affidavits. The real estate contract which Shoreline purchased was not by its terms a negotiable instrument.[1] 11 Am. Jur. 2d *Bills and Notes* § 1 (1963). It could be "assigned," but it could not be "negotiated."

> Between ordinary contracts and negotiable instruments there is the difference between "assignability" and "negotiability" and the fact that a negotiable instrument itself imports a consideration.

(Footnotes omitted.) 11 Am. Jur. 2d *Bills and Notes* § 1 (1963). By the terms of the contract, Rodin agreed to pay only the O'Beirns—not to order or to bearer. On the other hand, the real estate contract requires the delivery of a

---

[1]For the statutory definition of a negotiable instrument, see RCW 62A.3-104 (similar to RCW 62.01.001, repealed by adoption of the Uniform Commercial Code in 1967).

warranty deed by the O'Beirns when Rodin has made all of the payments required.

The bilateral nature of a contract may preclude it from falling within the term "instrument" or the classification of bills and notes.

(Footnote omitted.) 11 Am. Jur. 2d *Bills and Notes* § 1 (1963).

By purchasing the property subject to the contract, Shoreline has simply taken the place of the O'Beirns. Shoreline has no greater rights than were possessed by the O'Beirns. But Rodin has lost none of her rights against the O'Beirns.

[T]he general rule is that an assignee of a non-negotiable chose in action acquires no greater right than was possessed by his assignor, and simply stands in the shoes of the latter.

(Footnote omitted.) 6 Am. Jur. 2d *Assignments* § 102 (1963). *See also* Restatement of Contracts, § 167 (1932).

The general rule was codified in Washington as RCW 4.32.110 which has been superseded by CR 13(j) as follows:

The defendant in a civil action upon a contract express or implied, other than upon a negotiable promissory note or bill of exchange, negotiated in good faith and without notice before due, which has been assigned to the plaintiff, may set off a demand of a like nature existing against the person to whom he was originally liable, or any assignee prior to the plaintiff, of such contract, provided such demand existed at the time of the assignment thereof, and belonging to the defendant in good faith, before notice of such assignment, and was such a demand as might have been set off against such person to whom he was originally liable, or such assignee while the contract belonged to him.

Upon discovery of the fraud practiced upon her, Rodin could elect to seek either rescission or damages. Having decided to seek damages she could adopt either an offensive or a defensive posture. She prudently chose the former and

thus established the amount of her damages at a point in time which permitted her to claim an offset. Had she continued to make payments on the contract until the balance owed was less than the amount of her damages, she could have lost her right to recover any sum beyond the contract balance by the operation of the statute of limitations. *Ennis v. Ring,* 56 Wn.2d 465, 341 P.2d 885, 353 P.2d 950 (1959); *Felthouse & Co. v. Bresnahan,* 145 Wash. 548, 260 P. 1075 (1927).

Although Shoreline would have been a proper party defendant in the damage action, it was not a necessary party. Because Shoreline was not a party to the action, however, the judgment therein is not binding upon it. Thus it was necessary for Rodin to institute this declaratory judgment action. Rodin could have, and no doubt should have, joined Shoreline in the first action and thus avoided the necessity of a second lawsuit.

The judgment in the damage action is, however, res judicata as to Rodin's right to assert an offset against the O'Beirns. It is of course conceivable that in a proper case an assignee of a real estate contract might successfully assert as a defense some theory of law such as laches or estoppel. *Nelson v. Bailey,* 54 Wn.2d 161, 338 P.2d 757, 73 A.L.R. 400 (1959). The agreed facts here, however, do not support either theory and there is no evidence to support Shoreline's claim of release or waiver. Judge Walterskirchen's judgments are affirmed.

As between Shoreline and Pioneer, there is no dispute of fact. The sole question presented by Shoreline's appeal is whether or not Pioneer's policy of title insurance issued to Shoreline at the time it bought from the O'Beirns covers a loss resulting from the O'Beirns' fraud.

Clearly, it does not. By the terms of the policy, Pioneer insured against loss if title to the property was not vested in Shoreline in fee simple free from defect, lien, or encumbrance. The contract between Rodin and the O'Beirns was specifically excepted from coverage. Judge Roney's judg-

ments disposing of Shoreline's cross complaint against Pioneer are affirmed.

■ As between Shoreline and the O'Beirns, only the denial of Shoreline's motion for summary judgment is an issue. Shoreline's motion is supported only by its cross complaint. The O'Beirns' answer denying the allegations of Shoreline's cross complaint creates an issue of fact. The denial of Shoreline's motion is not an appealable ruling. CAROA 14(1); *Hontz v. White,* 56 Wn.2d 538, 348 P.2d 420 (1960).

> While the denial of a motion for summary judgment upon a claim is usually grounded upon the presence of a triable issue of fact, it may rest on other grounds. But no matter what the basis may be for refusing summary judgment, the order of denial is interlocutory and not a final judgment for the claim still remains pending for trial.

(Footnotes omitted.) 6 J. Moore, Federal Practice ¶ 56.21[2] (2d ed. 1965). The issue can be reviewed after trial in an appeal from final judgment. Or the motion can be renewed with a supporting affidavit to establish that there is no genuine issue of fact. In all respects, the judgments of Judges Walterskirchen and Roney are affirmed.

SWANSON and UTTER, JJ., concur.

Petition for rehearing denied October 14, 1970.
Review denied by Supreme Court November 25, 1970.