[Civ. No. 37601. Second Dist., Div. Three. Aug. 25, 1971.]

RANCHERS BANK, Plaintiff, Cross-defendant and Respondent, v. ABE PRESSMAN et al., Defendants, Cross-complainants and Appellants; JOHN M. KNOLL et al., Cross-defendants and Respondents.

JOHN M. KNOLL, Plaintiff and Respondent, v. ABE PRESSMAN et al., Defendants and Appellants.

(Consolidated Appeals.)

**COUNSEL**

Leo Shapiro for Defendants and Appellants.

Waugh & Waugh, Sanford A. Waugh and Doane Brakemeyer for Plaintiffs and Respondents.

**OPINION**

**COBEY, J.**—Abe Pressman and his wife Ruth Pressman appeal from adverse judgments entered, following a trial without a jury, in two actions consolidated for trial. They were defendants in actions brought respec-

tively by respondents Ranchers Bank and John Knoll, against whom they cross-complained.

The Pressmans' contentions on appeal are as follows: (1) The trial court's interpretation of a contract between Pressman and Ranchers Bank was erroneous; (2) The trial court erred in resolving an ambiguity in the trust receipts; (3) The trial court erred in finding that the Knoll suit was not subject to the compulsory counterclaim requirement of Code of Civil Procedure section 439.

We find no reversible error and affirm.

## THE FACTS

On or about October 1, 1965, Pressman entered into an agreement with John Knoll whereby he purchased Knoll's automobile agency, Westway Motors, located in Lancaster. The consideration for the purchase was a promissory note in the amount of $5,000 given Knoll by Pressman.

On or about November 15, 1965, Pressman entered into arrangements with Ranchers Bank to finance his operation of Westway Motors.[1] The arrangement between Pressman and Ranchers Bank provided that the bank would furnish the money for Pressman's purchase of his automobile inventory and Pressman would pledge by trust receipts these cars to the bank as collateral for the bank's loans. As Pressman sold the pledged automobiles to his customers, he would pay off the loan monies due Ranchers Bank from the proceeds of these sales. Pressman and Ranchers Bank further agreed that if a sale was by conditional sale contract, the bank would purchase the contract from Pressman. The bank would then credit Pressman's trust receipts account to pay off the loan outstanding on the automobile sold, and remit any excess to Pressman.

The contract between Ranchers Bank and Pressman for the sale of conditional sale contracts consisted of a basic agreement and an amendatory agreement. The basic agreement provided in effect that Pressman would endorse such contracts to the bank "with recourse." Such an endorsement pledges that the endorser, here Pressman, guarantees the payment of the contract obligations. The amendatory agreement provided, however, that Pressman would endorse such contracts "without recourse," provided further that should any contract so endorsed and assigned to the bank become more than 90 days delinquent, it would then be the responsibility of Pressman.

---

[1]Ranchers Bank had provided financing for Westway Motors during Knoll's ownership.

The trust receipts each provided that upon the happening of certain events, the bank was privileged to take possession of any pledged automobiles, dispose of them, and charge its losses thereon against Pressman. The trust receipts document, although it contained the heading "Ranchers Bank, Entruster," also contained the words "United California Bank, Entruster" in the body. There was, however, no relationship between Ranchers Bank and United California Bank.

On or about May 15, 1966, Pressman became dissatisfied with his purchase of Westway Motors and his arrangements with Ranchers Bank. He believed that Knoll and Ranchers Bank had conspired to defraud him. Pressman abandoned Westway Motors and allowed the bank to take charge of his inventory of automobiles. He sent notices of rescission to the respondents purporting to rescind his contract of sale with Knoll, the outstanding trust receipts to the bank, and his contract for the sale of conditional sale contracts to the bank.

Ranchers Bank filed suit against Pressman on October 10, 1966. The bank sought to recover the balances due on conditional sale contracts assigned by Pressman and more than 90 days delinquent, the amount of the difference between the money loaned Pressman on trust receipts and the proceeds of the bank's liquidation of the pledged automobiles, and other relief not at issue here. On November 3, 1966, Pressman cross-complained against Ranchers Bank and its officers for rescission and damages for fraud. John Knoll was named as a cross-defendant.

On November 25, 1968, prior to the trial in the Ranchers Bank suit, Knoll filed an independent suit against Pressman upon the aforementioned promissory note that was the consideration for the sale of Westway Motors by Knoll to Pressman. Pressman demurred to Knoll's complaint on the ground that the obligation sued upon should have been pled as a counterclaim to Pressman's cross-complaint against Knoll, and that an independent suit on the obligation was barred by Code of Civil Procedure section 439. The demurrer was overruled. In his answer to the Knoll complaint, Pressman then pled section 439 as an affirmative defense.

By stipulation the Ranchers Bank suit and the Knoll suit were consolidated for the purposes of trial. The court found generally for Ranchers Bank on each of its claims, and found in favor of Knoll on the promissory note. The court also found in favor of cross-defendants Ranchers Bank and Knoll on the Pressman cross-complaint. This appeal from the two judgments followed.

THE APPEAL FROM THE JUDGMENT
IN RANCHERS BANK v. PRESSMAN

*The Agreement to Purchase*
*Conditional Sale Contracts:*

■ The Pressmans first contend that the trial court erred in permitting the bank to charge him for its losses on the conditional sale contracts assigned to the bank. They challenge the court's finding that: ". . . [A]ll conditional sales contracts entered into between the parties which were more than 90 days delinquent were thereafter 'with recourse' and could be charged by [the bank] to said defendant, or against his reserve account, despite the fact that the individual conditional sales contracts were not endorsed by said defendant for recourse against him." They argue that the endorsement by Pressman of each conditional sale contract he assigned to Ranchers Bank "without recourse," and the bank's acceptance of those contracts so endorsed constituted a modification of their contract of November 15, 1965. They cite Civil Code section 1698, which reads in pertinent part: "A contract in writing may be altered by a contract in writing. . . ."

We cannot agree that such endorsements and their acceptance modified the basic agreement. The basic agreement provided: "2. Bank will purchase acceptable contracts written on forms approved by Bank at agreed rates of discount. Contracts shall be assigned and guaranteed by Dealer in the form provided. Such assignment and guarantee shall govern the rights and responsibilities of the parties to this agreement, except as they may be modified herein." The amendatory agreement, executed the same day as the basic agreement, contained the following provision: "1. Despite the provisions of the aforesaid written contract already executed by the parties which has the effect of a with recourse endorsement of the Conditional Sales Contracts concerned such endorsements or transfers shall be considered by the parties to be without recourse except with regard to any Conditional Sales Contracts involved where the payments become more than 90 days delinquent." In our view, the quoted language of the basic agreement between the parties makes clear that the contracts Pressman transferred to Ranchers Bank were transferred without recourse against Pressman, save under the specific circumstances outlined in the quoted paragraph 1 of the amendatory agreement. Neither of the alternate printed endorsements on the back of the approved conditional sale contract form accurately reflects the full agreement between the parties. The quoted paragraph 2 of the basic agreement specifies that modification may only be made through modification of the basic agreement. In light of this unambiguous language, and in light of Pressman's testimony at

trial that his understanding of the basic agreement agreed with that of the bank, we hold that the quoted finding was correct.

*The Court's Resolution of an*
*Ambiguity in the Trust Receipts:*

■ The trust receipt forms used by the parties carried in bold print in the top left-hand corner the heading "Ranchers Bank, Entruster." In the body of the form, however, in somewhat smaller print, appeared the words "United California Bank, Entruster," the result of a printer's error in copying from a form supplied him by Ranchers Bank. The Pressmans argue that the designation of United California Bank as entruster was a unilateral mistake by the party drawing the contract which should not be judicially corrected and cites *Roller* v. *California Pacific Title Ins. Co.,* 92 Cal. App.2d 149 [206 P.2d 694]. The trial court found that the trust receipt contained a patent ambiguity, and resolved that ambiguity in Ranchers Bank's favor upon the court's examination of the practice of the parties. The Pressmans label this finding as error.

We disagree. The Pressmans' argument and authority apply to a situation where there is no question as to the meaning of the language, but the language is the result of a mistake. Within this document there was conflict as to which of the banks named therein as "Entruster" was intended to be the entruster. The trial court in these circumstances properly resolved this ambiguity by examining the conduct of the parties. (See *Crestview Cemetery Assn.* v. *Dieden,* 54 Cal.2d 744, 754 [8 Cal.Rptr. 427, 356 P.2d 171].) Finally, Pressman himself admitted in effect that he had suffered no harm from this ambiguity. Under these circumstances we hold that there was no error in the court's finding on this issue.[2]

### THE APPEAL FROM THE JUDGMENT
### IN KNOLL V. PRESSMAN

*Application of Code of*
*Civil Procedure Section 439:*

The trial court awarded judgment in favor of Knoll upon his suit to recover the amount due on the promissory note executed by Pressman as a part of the compensation for Westway Motors. The Pressmans contend that this obligation was a claim that should have been pled as a counter-

---

[2]Even adopting the Pressmans view that this conflict was a mistake on the bank's part, the mistake cannot be considered a material one in view of the fact that Pressman was not misled. He continued to deal, as always, only with Ranchers Bank. Therefore the mistake cannot be a basis for relief. (*Roller* v. *California Pacific Title Ins. Co., supra,* at p. 157.)

claim in Knoll's answer to their cross-complaint and that Knoll's failure to so plead the obligation bars his recovery under Code of Civil Procedure section 439. The section reads: "If the defendant omits to set up a counter-claim upon a cause arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim, neither he nor his assignee can afterwards maintain an action against the plaintiff therefor." The immediately preceding section 438 describes counterclaims generally as claims which: "must tend to diminish or defeat the plaintiff's recovery and must exist in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action. . . ."

A compulsory counterclaim must therefore be a claim tending to diminish the plaintiff's recovery; it must permit a several judgment between the parties; and it must arise out of the same "transaction" as that which produced the plaintiff's original action. This claim is often described as a "transaction counterclaim."

■ The case at bar presents a threshold question that has apparently not been decided in California: "Do sections 438 and 439 permit a counter-claim (and *require* a compulsory counterclaim) in an answer to a cross-complaint?" Two recent decisions of this court have expressed opposing views in dicta while expressly declining to decide the question. We believe that the better view is that such pleadings should be permitted and, in appropriate circumstances, required.

In *Carey* v. *Cusack,* 245 Cal.App.2d 57 [54 Cal.Rptr. 244], hearing denied, a division of this court suggested that such pleadings not be permitted or required. The court based this conclusion upon the language of the statutes. As quoted above, these sections refer only to "plaintiffs" and "defendants." The court also cited a statement in Chadbourn's California Pleading that counterclaims should not be used to bring in third parties or to seek relief against a co-defendant. (2 Chadbourn, Cal. Pleading (1961 ed.) § 1684, p. 649; *Carey* v. *Cusack, supra,* 245 Cal.App.2d at pp. 64-66.)

In *Great Western Furniture Co.* v. *Porter Corp.,* 238 Cal.App.2d 502 [48 Cal.Rptr. 76], hearing denied, another division of this court suggested that such pleadings should be permitted. The court in *Great Western Furniture* also relied upon language in the Code of Civil Procedure: "It seems to us that, . . . when a cross-complaint has been filed and 'served upon the parties affected thereby . . . such parties may demur or answer thereto, . . . as to the original complaint.' (Code Civ. Proc., § 442.) It follows therefore that the answer of a cross-defendant, like that of a defendant, 'shall contain: . . . (2) A statement of any new matter con-

stituting a . . . counterclaim.' (Code Civ. Proc., § 437.)" (238 Cal. App.2d at p. 513.)

We believe *Great Western* states the better rule. Not only do the references to the statutory sections regarding cross-complaints suggest that they should be treated as complaints would be treated, but permitting counterclaims to cross-complaints also serves the legislative purpose of the counterclaim sections. The authors of the 1968 Supplement to Chadbourn recognize this in stating their preference for the view expressed in *Great Western Furniture* as opposed to that in *Carey*: "[S]upport for the suggested interpretation [in *Great Western*] may be found in the general policy in favor of avoiding multiplicity of actions." (2 Chadbourn, Cal. Pleading (1968 Supp.) pp. 100-101.)

■ The next question to be resolved is whether the claim for the amount due on the note met the three tests for a compulsory counterclaim. The trial court made the following findings of fact: "k. That . . . the Court finds that it is not true that [Knoll's] demand arose from the same transaction forming the foundation of the cross-complaint . . . which is based in conspiracy 'for rescission and damages for fraud.'

"1. It is not true that the promissory note could or should have been set forth as a counterclaim to the cross-complaint . . . in that it did not tend to defeat or diminish cross-complainant's aforefound action in that a judgment for cross-complainant would have been res adjudicata on collectibility of the promissory note. . . . The promissory note sued on herein was not due and collectible on October 10, 1966. A cross-complaint in [the Ranchers Bank suit] would have been premature. It is not true that [Knoll's] causes of action are barred by § 439 CCP."

The Pressmans contend that these findings are erroneous. We agree. The trial court found that the promissory note did not arise from the same transaction as did the cross-complaint. The finding suggests, and Knoll argues on appeal, that the cross-complaint of the Pressmans was based upon an alleged conspiracy formed after the sale of Westway Motors. This analysis adopts too narrow an interpretation of "transaction." To achieve the legislative purpose of section 439, the word "transaction" should be interpreted broadly to encourage the joining of all claims arising from "a series of acts or occurrences logically interrelated." (*Saunders* v. *New Capital for Small Businesses, Inc.,* 231 Cal.App.2d 324, 336 [41 Cal.Rptr. 703]; *Sylvester* v. *Soulsburg,* 252 Cal.App.2d 185, 193 [60 Cal. Rptr. 218].) From the record before us we conclude that all of the claims at issue in the trial below arose out of the same transaction—the sale of the business known as Westway Motors.

The trial court found that Knoll's claim on the note did not tend to diminish or defeat the recovery sought by the Pressman cross-complaint. The court reasoned that if the cross-complaint's prayer for rescission were granted, the contract of sale and the note would both be nullified and therefore there would be no counterclaim to diminish or defeat the recovery on the cross-complaint. This analysis overlooks the fact that cross-complainants asked for damages as well as for equitable relief. While Knoll's claim on the note could not diminish or defeat purely equitable relief on the cross-complaint (see *Ward* v. *Goetting,* 44 Cal.App. 435 [186 P. 640]), it could reduce or eliminate any damages recovered on the cross-complaint. (See *Brunswig Drug Co.* v. *Springer,* 55 Cal.App.2d 444, 451 [130 P.2d 758].)

Finally, the trial court found that as the note was not due and collectible as of October 10, 1966,[3] a counterclaim based upon the note would have been premature. We cannot agree with this conclusion. On September 21, 1966, Pressman served Knoll with a notice of rescission purporting to rescind both the contract for sale of Westway Motors and the note. This was certainly notice to Knoll that Pressman did not intend to honor the note. Pressman's attempted rescission was an anticipatory breach of the obligation evidenced by the note. When on November 3, 1966, the Pressmans cross-complained against Knoll and others for rescission of the contract and damages for fraud, Knoll was then on notice that, as the court stated in *Saunders* v. *New Capital for Small Businesses, Inc., supra,* 231 Cal.App.2d at pages 338-339: "If there were any items on the other side of the account for which [Knoll] was entitled to credit, the situation required that he present them. . . . He had reasonable notice from the [cross-complaint] that the time had come for the settling of his accounts." For these reasons we hold that the trial court's conclusion of the nonapplicability of Code of Civil Procedure section 439 was in error.

This holding brings us to the question whether the consolidation of the Ranchers Bank and Knoll suits cured this error. In *Datta* v. *Staab,* 173 Cal.App.2d 613, 622 [343 P.2d 977], the court noted that courts have approved the consolidation of counteractions growing out of the same transaction in lieu of filing a counterclaim in the first action. Use of this alternative procedure accomplishes the basic policy of section 439. As Justice Shinn said in *Kittle Mfg. Co.* v. *Davis,* 8 Cal.App.2d 504, 513 [47 P.2d 1089]: "The policy of the law . . . is to require reciprocal rights flowing from a common source to be determined in a single action, thus

---

[3]This date is that when the Ranchers Bank suit was filed. The parties to this appeal tacitly recognize this date as a mistake; they assume that the last date for the filing of a counterclaim was November 30, 1966, the last day to answer the Pressmans' cross-complaint.

avoiding not only unnecessary vexatious litigation but also the contingency of conflicting judgments. . . ." The law abhors forfeitures. (*Feder* v. *Wreden Packing & Provision Co.,* 89 Cal.App. 665, 672-673 [265 P. 386].) The consolidation of the two actions for trial accomplished the purpose of section 439 and that of avoiding the forfeiture of Knoll's claim on the note. We hold therefore that such consolidation cured the error of noncompliance with section 439.[4]

Our conclusions in this case in regard to section 439 are in harmony with the current trend toward encouraging and requiring greater joinder of actions in order to reduce piecemeal litigation. (See Cal. Law Revision Commission, Recommendation and Study Relating to Counterclaims and Cross-Complaints, Joinder of Causes of Action, and Related Provisions (October 1970); and Friedenthal, *Joinder of Claims, Counter-claims, and Cross-Complaints: Suggested Revision of the California Provisions* (1970) 23 Stan.L.Rev. 1.)

## ATTORNEY'S FEES

■ The three Pressman notes provide for attorney's fees should litigation be required for their collection. Both respondents are therefore entitled to attorney's fees on appeal for defending the judgments based upon these notes. (See *Wilson* v. *Wilson,* 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725].) We are not in a position to make the award ourselves as we lack the requisite factual basis. Therefore, we will direct the trial court to take the necessary evidence to fix the amount. (See *American City Bank* v. *Zetlen,* 272 Cal.App.2d 65, 67 [76 Cal.Rptr. 898].)

The judgments are affirmed. As soon as the remittitur herein is filed, the trial court is directed to hear respondents' applications for attorney's fees on both appeals and to fix a reasonable amount therefor.

Ford, P. J., and Allport, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 21, 1971.

---

[4]We note that the overruling of the Pressmans' demurrer to the Knoll complaint was also error. Had they sought extraordinary relief prior to trial, they might have prevailed. By answering, however, they may be regarded as having waived their objection. (See *Goble* v. *Dotson,* 203 Cal.App.2d 272, 282 [21 Cal.Rptr. 769].) In any event they appear to have waived the error by stipulating to the consolidation of the actions for trial.