[No. 6190-6-III. Division Three. November 7, 1985.]

WALTER IMPLEMENT, INC., *Respondent,* v. DONALD FOCHT, ET AL, *Appellants.*

*John D. Knodell,* for appellants.

*Michael L. Crofts* and *Underwood, Campbell, Brock & Cerutti,* for respondent.

THOMPSON, J.—This case involves the question of whether a liquidated damages clause in a preprinted equipment lease form is a proper remedy following the lessee's default. The trial court upheld the liquidated damages clause. We reverse.

In 1980, Donald Focht, a farmer, contacted Walter Implement, Inc., about obtaining a replacement for his old tractor. After conferring with James Walter, manager and president of Walter Implement, Mr. Focht entered into a 5-year lease agreement of an Allis–Chalmers tractor, disc, plow and two cultipackers. The parties signed an Allis–Chalmers Credit Corporation standard form equipment lease which provided for five $10,806.32 annual payments. The lease was then sold by Walter Implement to the corporation for a retail value of approximately $42,461.

Shortly thereafter, Mr. Focht informed Walter Implement he would not be able to make the lease payments. After failing to find another purchaser or party to assume the lease, Mr. Focht cooperated in allowing Mr. Walter to repossess the tractor. When Mr. Walter was in the process of repossessing the tractor, he told Mr. Focht he would sell

it and in fact eventually did so by private sale in 1981.

In 1983, Walter Implement brought suit to enforce a liquidated damages clause in the lease. Following a bench trial, Walter Implement was awarded judgment for $24,092.56, including prejudgment interest.[1]

Because many of the issues raised by Mr. Focht are extraneous to the resolution of this case, we confine our discussion to a limited number of claims. First, Mr. Focht contends Walter Implement lacks standing to bring this action because the lease was assigned to Allis–Chalmers Credit Corporation. We disagree.

Both court rule and statute provide that "[e]very action shall be prosecuted in the name of the real party in interest". CR 17(a); former RCW 4.08.010. "CR 17(a) is designed to expedite litigation [and] . . . is not intended to allow technicalities to interfere with the litigable merits." *Eastlake Constr. Co. v. Hess,* 33 Wn. App. 378, 381, 655 P.2d 1160 (1982), *aff'd in part,* 102 Wn.2d 30, 686 P.2d 465 (1984); *Fox v. Sackman,* 22 Wn. App. 707, 591 P.2d 855

---

[1]Judgment was based on the following computations submitted by Walter Implement:

| | |
|---|---|
| $10,806.32 x 5 = | $54,031.60 |
| 20% liquidated damages | +8,645.06 |
| | 62,676.66 |
| Payment credit | −10,806.32 |
| | 51,870.34 |
| Resale (net – tractor only) | −31,510.58 |
| | 20,359.76 |
| Resale (net – cultipacker only) | −1,847.20 |
| | 18,512.56 |
| Credit (cultipacker/plow) | −1,561.00 |
| | 16,951.56 |
| Case Disc | +1,000.00 |
| Damages (not including service charge) | $17,951.56 |

. . .

Service charge of 18% or 1.5% per month from September 29, 1981 to August 24, 1983 = $\frac{\$17,951.56 \times 18\%}{365}$ = $8.85/day x 694 days = $6,141.90

. . .

| | |
|---|---|
| | $17,951.56 |
| | 6,141.90 |
| Total Due | $24,095.46 [sic] |

(1979). Mr. Focht raised the real–party–in–interest objection during trial when the court would not allow inquiry into the nature of the relationship between the corporation and Walter Implement, and the cost of reassignment to Walter Implement. The court denied Mr. Focht's motion to amend his pleadings to conform to the proof, essentially treating real–party–in–interest as an affirmative defense which had been waived.[2] Washington rules do not contain a specific procedure for raising an objection that plaintiff is not the real party, or state when such a challenge should be made. Under analogous federal rules, some federal courts have treated such an objection as an affirmative defense under Fed. R. Civ. P. 8(c) or 9(a), deemed waived by delay. Others treat it as a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). The latter would not result in waiver because of the protection afforded that defense by Fed. R. Civ. P. 12(h)(2). *See* 6 C. Wright & A. Miller, *Federal Practice* § 1554 (1971).

The crux of this issue, however, is whether Walter Implement retained sufficient interest in the lease to maintain the action against Mr. Focht. At trial, Tom Ducic, the credit corporation's agent, testified that Walter Implement assigned the lease to the corporation with the understanding that in the event the customer defaulted, the dealer would be obligated to pay.[3] Generally, an assignee of a

---

[2]Although Walter Implement contends Mr. Focht waived this issue by failing to specifically plead "capacity to sue", we note capacity to sue and real–party–in–interest are not synonymous terms. Real–party–in–interest relates to the identification of plaintiffs. CR 17(a). "Capacity, on the other hand, relates both to plaintiffs and defendants, is not directly related to the substantive merits, and speaks to personal qualities or condition. It is possible for a person to be the real party in interest and still not have capacity to sue or be sued." 3A L. Orland, Wash. Prac. § 5201, Author's Comment at 323 (1980).

[3]Mr. Ducic used the term "without recourse" to characterize the assignment. However, the term "without recourse" is generally used in conjunction with negotiable instruments to mean the endorser has pledged his guaranty of payment of the contract obligations. RCW 62A.3–414. *See also Ranchers Bank v. Pressman*, 19 Cal. App. 3d 612, 97 Cal. Rptr. 78 (1971). RCW 62A.3–104 provides that a negotiable instrument is

nonnegotiable chose in action simply stands in the shoes of his assignor. *Rodin v. O'Beirn,* 3 Wn. App. 327, 330, 474 P.2d 903, *review denied,* 78 Wn.2d 996 (1970). Pursuant to RCW 4.08.080, an assignee, "by assignment in writing, signed by the person authorized to make the same . . .", may maintain an action against the obligor named in the chose in action. In *Ingle v. Ingle,* 183 Wash. 234, 237–38, 48 P.2d 576 (1935), notwithstanding this statutory language, the court held the assignee's statement he returned the chose in action to the assignor prior to the commencement of the action and "stood ready to make a written assignment of it if any of the parties so desired" was sufficient to satisfy a real–party–in–interest challenge. The court's holding was based on its belief that by so testifying, the assignee was "as firmly bound by the judgment as though he had been a party to the action", thus protecting the debtor "against the possibility of being harassed by more than one suit on the claim . . ." *Ingle,* at 238. Although Mr. Ducic's testimony is less precise, it can be construed as evidence of the corporation's participation in the suit and its acquiescence to Walter Implement's claimed interest in the lease. In view of this testimony and the fact that CR 17(a) is not intended to allow a technical bar to meritorious review, we hold Walter Implement has standing to bring this suit.

█ Next, Mr. Focht claims the liquidated damages provision in the lease constitutes a penalty; thus, it is unenforceable. We agree. Washington favors liquidated damages

---

(1) any writing . . .

(a) . . . signed by the maker or drawer . . .

(b) [which] contain[s] an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power . . . and

(c) [is] payable on demand or at a definite time; and

(d) [is] payable to order or to bearer.

The lease in question contains no "order or bearer" language, and incorporates additional obligations and promises between the parties. Consequently, the lease could be "assigned", but it could not be "negotiated". *Rodin v. O'Beirn,* 3 Wn. App. 327, 329, 474 P.2d 903, *review denied,* 78 Wn.2d 996 (1970). Thus, contract law regarding assignments controls.

and, unless found to be a penalty or otherwise unlawful, courts will generally uphold such provisions. *Management, Inc. v. Schassberger,* 39 Wn.2d 321, 326, 235 P.2d 293 (1951); *Northwest Acceptance Corp. v. Hesco Constr., Inc.,* 26 Wn. App. 823, 614 P.2d 1302 (1980); *Brower Co. v. Garrison,* 2 Wn. App. 424, 432, 468 P.2d 469 (1970). The question of whether a stipulated sum is liquidated damages or a penalty is answered by application of the rule enunciated in *Brower Co.* and quoted in *Northwest Acceptance,* at 828:

> A liquidated damage clause must meet certain preconditions. The amount of damages stipulated must be a reasonable estimation of compensation for the damages caused by the contractual breach. The scope of the harm caused by the breach must be difficult of accurate estimation.

In addition, the intention of the parties is important in determining whether the clause is one for liquidated damages or for a penalty. *Underwood v. Sterner,* 63 Wn.2d 360, 365, 387 P.2d 366 (1963); *Madler v. Silverstone,* 55 Wash. 159, 165, 104 P. 165 (1909).

The lease signed by Mr. Focht provides the following creditor's remedies in the event of a default:

> In the event of default by Lessee, Lessor may terminate the lease and, at its option,
>
> 1. Treat the equipment as its own in full settlement of Lessee's obligations under the lease, or
> 2. By notice to Lessee, sell the equipment at public or private sale, in which event, Lessee shall be liable to Lessor for the difference between (a) the sum of all rentals called for by the lease plus an amount equal to twenty (20) percent of the aggregate minimum rental charges for the unexpired portion of the term of this agreement, not as a penalty, but as and for liquidated damages, less (b) the sum of all rent paid and net proceeds of the sale.
> 3. By notice to Lessee, re–lease the equipment, in which event Lessee shall be liable to Lessor for the difference between (a) total unpaid rentals plus the expenses of re–leasing and an amount equal to twenty (20) percent of the aggregate minimum rental charges for the unexpired portion of the term of this agreement, not

as a penalty, but as and for liquidated damages, less (b) the sum of all rental paid by Lessee and rental received by Lessor from the re–lease.

4. Demand immediate payment of all unpaid rentals from Lessee.

5. Failure on the part of Lessor to exercise any of its rights hereunder shall not be deemed a waiver of such rights or of any default.

The record is devoid of any intention on the part of the contracting parties to include a liquidated damages clause in the lease. Both Mr. Walter and Mr. Focht testified only the "price of the tractor" was negotiated and not the amount of the lease or standard terms of the contract.

## I
### REASONABLE ESTIMATION OF DAMAGES

A liquidated damages formula is generally considered to be fair when it contains two features: (1) the lessor's expectation for future rentals under the lease is reduced to the present value or discounted; and (2) the lessee is given credit for depreciation savings when the equipment is returned to the lessor before the end of the lease. *Northwest Acceptance,* at 830; *Siletz Trucking Co. v. Alaska Int'l Trading Co.,* 467 F.2d 961 (9th Cir. 1972). "Discounting has been recognized as the second operative element of a fair liquidated damages clause." *United Leasing & Fin. Servs., Inc. v. R.F. Optical, Inc.,* 103 Wis. 2d 488, 495, 309 N.W.2d 23, 27 (Ct. App. 1981). *See also W.L. Scott, Inc. v. Madras Aerotech, Inc.,* 103 Idaho 736, 653 P.2d 791, 797 (1982). Here, the liquidated damages clause is devoid of any attempt at "discounting" or depreciation of the equipment in favor of the debtor.

## II
### ANTICIPATED ACTUAL DAMAGES

"[T]he test of anticipated damages looks to the time of contracting." *Northwest Acceptance,* at 829. In *American Fin. Leasing & Servs. Co. v. Miller,* 41 Ohio App. 2d 69, 322 N.E.2d 149 (1974), the court construed an almost identical remedies provision in a lease of service station equip-

ment. In applying the test of anticipated actual damages, the court held at page 74:

In the first instance, the actual damages that would be sustained by the lessor, in the event of a breach by the lessees would not be difficult to ascertain or prove. There would be little or no uncertainty in determining actual damages. Such damages would be the unpaid portion of the lease and, if the property had been repossessed, the costs of repossession and sale, and any deficiency remaining after such sale.

We agree with *Miller*'s assessment of actual anticipated damages, particularly since Walter Implement claims liquidated damages here represent depreciation, repossession and sale, and attorney fees, all being items easily calculated. Thus we hold the liquidated damages clause is unenforceable because it is not a product of the parties' negotiations, is inherently unfair, and bears no relation to anticipated actual damages.

Finally, Mr. Focht, relying upon alternate theories, claims the court erred in awarding Walter Implement a deficiency judgment. To resolve this issue, we need only look to the language of the lease. Where facts are undisputed, the construction of a contract is a matter of law for the reviewing court. *Yeats v. Estate of Yeats,* 90 Wn.2d 201, 204, 580 P.2d 617 (1978); *Jones Assocs. v. Eastside Properties, Inc.,* 41 Wn. App. 462, 465–66, 704 P.2d 681 (1985).

The lease allows the lessor, at its option, to pursue any of four different avenues of recovery in the event of lessee's default. Only two remedies provide notice is to be given the lessee; both allow for a deficiency and liquidated damages. Mr. Focht interprets this notice requirement as a condition precedent to Walter Implement's right to collect a deficiency under the lease. "A condition precedent is an event occurring after the making of a valid contract which must occur before a right to immediate performance arises." *Jones Assocs.,* at 466. The party seeking enforcement of the contract has the burden of proving the condition has been

performed. *Ross v. Harding,* 64 Wn.2d 231, 240, 391 P.2d 526 (1964). "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances . . ." 5 S. Williston, *Contracts* § 663, at 127 (3d ed. 1961).

Here, the lease is a preprinted form drafted by the credit corporation. The pertinent terms are hidden in fine print on the reverse side of the signature page. Walter Implement, which acted as the corporation's agent during the transaction, presented evidence that neither it nor Mr. Focht could negotiate any of the default terms. Although failure of both contracting parties to discuss each clause does not invalidate an adhesion contract, *Brower Co. v. Garrison,* 2 Wn. App. 424, 430, 468 P.2d 469 (1970), contract language subject to interpretation will be construed most strongly against the drafter. *Rouse v. Glascam Builders, Inc.,* 101 Wn.2d 127, 135, 677 P.2d 125 (1984); *Guy Stickney, Inc. v. Underwood,* 67 Wn.2d 824, 827, 410 P.2d 7 (1966).

> A contract provision must be read in pari materia with the whole contract and in light of all the circumstances surrounding the contract.
>
> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

(Citations omitted.) *Stender v. Twin City Foods, Inc.,* 82 Wn.2d 250, 254, 510 P.2d 221 (1973), and citations.

Here, in a telephone conversation prior to repossession, Mr. Walter told Mr. Focht he intended to sell the equipment. At the time of repossession, the parties talked about the possibility of finding a third party to assume the lease or buy the equipment. No other notice was given although the equipment was sold privately 1 year later. Walter

Implement argues a literal reading of the "by notice to Lessee" language requires only notice of an intent to sell and not notice of the particulars of any sale, *i.e.,* time, place, manner. We disagree, and note that under the default/remedy provisions of the lease repossession alone does not alert the lessee to the fact a deficiency may be charged against him. Without notice of the actual sale, Mr. Focht lost any opportunity to reduce his liability by either bidding himself or finding other bidders for the equipment to promote a higher sale price.

 Furthermore, we disagree with Walter Implement's claim that its "notice" satisfied the Uniform Commercial Code. RCW 62A.9–504(3) provides in part:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be *sent* by the secured party to the debtor, . . .

(Italics ours.) This provision may not be waived or varied by the parties unless the debtor signs, *after default,* a statement renouncing or modifying his right to notification of the sale. RCW 62A.9–501(3); RCW 62A.9–504(3). The exception to the notice requirement for sales on recognized markets refers to items such as stocks and bonds and does not encompass sellers of hard goods such as mobile homes, boats and trailers. J. White & R. Summers, *Uniform Commercial Code* § 26–10 (2d ed. 1980), and citations at page 1111. *Foster v. Knutson,* 84 Wn.2d 538, 527 P.2d 1108 (1974); *but see Mount Vernon Dodge, Inc. v. Seattle–First Nat'l Bank,* 18 Wn. App. 569, 570 P.2d 702 (1977).[4] J. White & R. Summers note at page 1112 that while some

---

[4]Although *Mount Vernon Dodge, Inc.,* apparently extended "recognized markets" to the sale of new and used cars, trucks and campers, it was in the context of whether it was commercially reasonable for a secured party to sell collateral at wholesale rather than retail. In addition, the debtors received written notice of and participated in the sale.

courts have found oral notice sufficient, "these findings are almost certainly contrary to the [code] draftsmen's intent". *See* RCW 62A.1–201(38) for the definition of "send".[5] Consequently, under a strict code interpretation, Walter Implement failed to give proper notice, and is therefore barred from obtaining a deficiency.[6]

Reversed.

GREEN, C.J., and MCINTURFF, J., concur.

Reconsideration denied January 8, 1986.

Review granted by Supreme Court March 7, 1986.

---

[5]RCW 62A.1–201(38) provides:

"'Send' in connection with any writing or notice means to deposit in the mail or deliver for transmission by any other usual means of communication with postage or cost of transmission provided for and properly addressed and in the case of an instrument to an address specified thereon or otherwise agreed, or if there be none to any address reasonable under the circumstances. The receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending."

[6]In response to the parties' dispute over liability for the lost Case disc, we note that even allowing the court's deduction of $1,000 for the disc from the amount credited to Mr. Focht (the combined net sale proceeds and Mr. Focht's one lease payment), Walter Implement recovered $2,264.10 above the retail value of the equipment.