Springer, J.,
dissenting:
I dissent because the Mitchells have not as yet caused an “exemplified copy of [a] foreign judgment ... [to be] filed with the clerk of [a] district court of this state.” NRS 17.350. They are not entitled, therefore, to have a writ of execution issued by one of our courts.
The Mitchells’ Nevada counsel insists that the California order awarding attorney’s fees, that was signed on February 14, 1992, and filed on February 18, 1992, is a judgment that is entitled to enforcement as a foreign judgment under NRS 17.350. The Mitchells filed an exemplified copy of this February 1992 order with the clerk of the district court and now seek to have that order enforced by our courts as though it were a final judgment.
As I read the Mitchells’ position as it is expressed throughout this appeal, they rely on the February 1992 order as the sole documentary basis for justifying the execution proceedings which they have instituted in the district court. The February 1992 order is either a final judgment, or it is not. If it is not a final judgment, then it is not entitled to be enforced in this state. To me the February order clearly is not a final judgment and clearly is not entitled to enforcement by the courts of this state.
The first problem with the February 1992 order is that it was entered as an ancillary order and is dependent entirely, for its vitality as a judicial instrument, upon an order issued in California in December of 1991 allowing summary judgment to be issued. On December 11, 1991, the California Superior Court issued an “order” (not a “judgment”) in which the court ruled that “no triable issue of fact exists” and that “summary judgment for plaintiffs against defendant Carl Martillaro for . . . $28,246.21 may be entered.” As far as I can tell, the actual summary judgment was never entered in accordance with this order. The December 11, 1991, order that summary judgment “may be entered” also provided that the plaintiffs, as prevailing parties, were authorized to move the court for attorney’s fees and costs in accordance with the California Civil Code, Section 1717 (West 1985). Without ever reducing the December 1991 order to judgment and after discharge of the debt adjudicated in that order, the Mitchells moved the court for attorney’s fees. It seems to me that under these circumstances, the February 1992 order *965 was a pre-judgment order rather than a post-judgment order; and, as such, it is clearly not the kind of final judgment that Nevada is required to honor and enforce under the United States Constitution. The Mitchells could not very well file in Nevada an authenticated copy of a summary judgment upon which the ancillary attorney’s fee order was necessarily based because, when these proceedings were instituted in Nevada, there was no supporting summary judgment recorded in California. There was no summary judgment against Martillaro entered in California which could be filed in Nevada. In February 1992, when this matter was instituted in Nevada, there was in existence in California no judgment against Martillaro, only an “Order Granting Summary Judgment for Plaintiff and Against Defendant Carl Martillaro,” in which the California trial court ordered that judgment against Martillaro “may be entered.” (Emphasis added.) In California, “an order granting summary judgment is merely a non-appealable preliminary order” and is not a final judgment. Saunders v. New Capital for Small Business, Inc., 41 Cal. Rptr. 703, 705 (Cal. Ct. App. 1964); Cal. Civ. Pro. Code § 437c(j) (West 1994). Martillaro insists throughout these proceedings that there can be no valid judgment for attorney’s fees (and perhaps not even a valid order awarding attorney’s fees) absent the entry of the final summary judgment pursuant to the December 1991 court order that judgment may be entered. I agree. At the time the February 1992 order for attorney’s fees was issued by the California Superior Court, there was no summary judgment in California to support what otherwise might have been a post-judgment order for fees and costs.
Beyond the absence of a supporting summary judgment in California, there are other persuasive reasons why the February 1992 order is not entitled to be enforced as a final judgment in Nevada. “The full faith and credit clause of the United States Constitution requires that jinal judgment entered in a sister state must be respected by the courts of this state . . . .” Rosenstein v. Steele, 103 Nev. 571, 573, 747 P.2d 230, 231 (1987) (emphasis added). “A judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition.” Restatement (Second) of Conflicts § 107 (1971) (emphasis added). There are a number of reasons why the February 1992 order cannot be considered to be final. First, neither the trial judge nor the Mitchells’ California counsel “recognized” the February 1992 order as being a final judgment in California, “the state of rendition.” This tells me that the Nevada courts should not be compelled to recognize the California order as a judgment when the rendering judge and the Mitch-ells’ counsel do not recognize the order to be a final judgment.
*966 In May of 1992, the Mitchells filed a Motion for Judgment. One would ordinarily assume that it would not be necessary to file such a motion for judgment if there were, in fact, already a valid, final judgment already in existence. On May 4, 1992, in support of the Mitchells’ motion for judgment, one of the Mitch-ells’ California lawyers, Robert Schuchardt, filed a formal “declaration” with the California court in which he attested that, as of May 4, 1992, “[n]o formal document entitled “judgment” has been signed by this court.” Another of the Mitchells’ California lawyers, William Weiner, filed a similar declaration in support of the Mitchells’ motion for judgment in which the lawyer “declare[d] under penalty of perjury under the laws of the State of California” as follows:
On April 7, 1992 I appeared as counsel for [the Michells’] ex parte application for order clarifying court’s intent. At that time, Judge Poliak [the judge who signed the February, 1992 order in question] and his clerk indicated that neither could find a document in the file which was a judgment.”
The fact that the Mitchells’ California counsel swore under oath that there was no judgment, coupled with the fact that the California lawyers found it necessary at all to move the court for a final judgment, is certainly a persuasive, if not conclusive, indication that as of May of 1992 there was no final, enforceable judgment against Martillaro existent in California. I happen to agree with the lawyers’ sworn statements and with the judge who issued the critical February 1992 order that there was no “document in the file which was a judgment.”
Furthermore, the California Code of Civil Procedure provides that “[a] judgment is the final determination of the rights of the parties in an action or proceeding.” Cal. Civ. Pro. Code § 577 (West 1976) (emphasis added). Quite plainly, even if summary judgment had been entered in this case, the subject February 1992 order was not a “final determination of the rights of the parties” with respect to attorney’s fees, for the order itself provides: “5. The court retains jurisdiction to award additional attorneys fees, costs and sanctions should the circumstances warrant.” This does not look like a “final judgment” to me. The order awarding $88,000.00 in attorney’s fees might very well have eventually become appealable under California Civil Procedure Code section 904.1 (West 1980) (if the summary judgment had been properly entered before issuance of the attorney’s fees order), but this alone does not give to the order the finality necessary for recognition in another state. Presumably the issue of attorney’s fees attendant to the collection of $25,000.00 had not been finally resolved by the California trial court or the court *967 would not have retained jurisdiction for the purpose of entitling it to “award additional attorneys fees, costs and sanctions as the circumstances warrant.” If the Mitchells want Nevada to enforce their California judgment, let them come here with a final judgment and not one subject to an “additional” award.
Finally, as I have previously suggested, California does not consider an order granting summary judgment to be a final judgment. See, e.g., Avila v. Standard Oil Co., 213 Cal. Rptr. 314, 317 (Cal. Ct. App. 1985) (“[a]n order granting a motion for summary judgment is a non appealable preliminary order”). This position was stated most forcefully in the recent California Court of Appeal’s case, Currie v. O’Connor Hospital, 93 Daily Journal, D.A.R. 16192 (December 22, 1993). Although the Currie Court observed that this rule often has harsh results, it went on to hold that “[t]he proper role of an appellate court is to adhere to and apply Code of Civil Procedure 904.1, not to devise and employ strategies for its wholesale avoidance.” Currie, 93 Daily Journal, D.A.R. at 16193 (quoting Modica v. Merin, 234 Cal. Rptr. 673, 675 (Cal. Ct. App. 1991).
Apparently, on May 15, 1992, the California court did get around to entering a final judgment which embodies the fee award against Martillaro. I know this because the Mitchells’ counsel has attached an authenticated copy of this document to one of its motions. In their Response to Addendum to Motion to Strike Filing of Foreign Judgment, filed in the district court, the Mitch-ells informed the court that they had finally obtained a final foreign judgment and that they were going to present the judgment for enforcement in Nevada. The Mitchells-advised the district court that they had ordered an exemplified copy of the (May 21, 1992) judgment and that “upon receipt, plaintiffs will request to amend their original notice of filing foreign judgment, substituting the new complete judgment. . . . Upon the filing the complete foreign judgment, discussion of the original notice of filing [of the order granting the motion for attorney’s fees] will be unnecessary.” To me this is a clear recognition by the Mitchells that there was something wrong, and that if they expected Nevada to enforce a California judgment, they had better come here with a final and “complete foreign judgment.” For some reason, however, the Mitchells’ Nevada lawyer retreated from her announced plan to abandon the Mitchells’ attempt to enforce a non-final order rather than a “complete foreign judgment” by “substituting” for the order then on file in the district court an authenticated final judgment from California. For reasons that escape me, the Mitchells decided not to pursue enforcement of the new complete judgment and put all of their money on the February 1992 order. The record is very clear that the Mitchells *968 are not seeking to enforce the May judgment and that they are, instead, interested only in trying to pursue enforcement of the non-final February 1992 order.[1]
Having stated my case for denying to the Mitchells’ enforcement of their California order of February, 1992, I find it useful to go on now to discuss the basic nature of this case. This case is all about attorney’s fees, and only attorney’s fees. The case begins with Martillaro’s making the mistake of signing on, some ten years ago, as an indemnitor or guarantor in a mining deal in California. In 1987, the Mitchells sued him on his agreement claiming that Martillaro owed them some $25,000.00 in attorney ’s fees that they claimed to have incurred as part of the mining deal. The trial court decided that Martillaro had no legal defense to the attorney’s fee claim and ordered that summary judgment “may be entered” against him. Within a few weeks after the court authorized summary judgment to be entered, and before summary judgment actually was entered, the amount claimed by the Mitchells, $28,246.21, was paid in full. Case closed? Not quite.
Unimaginably, the Mitchells, taking advantage of a provision in the order allowing for an award of attorney’s fees and costs, filed a motion seeking attorney’s fees in the sum of $195,042.00, for the yeoman service rendered by their fine lawyers in obtaining a summary judgment in a $25,000.00 collection suit. Martillaro argued, of course, that the amount ordered to be paid had already been paid and that $195,000.00 was a bit much to be claimed by any lawyers for collecting on a $25,000.00 claim. The judge was merciful. Given that the $28,246.21 due to the Mitchells had *969 already been paid, the judge decided that $195,000.00 was too much and awarded a mere $88,151.25 in attorney’s fees.
In granting the Mitchells’ motion for attorney’s fees, the trial judge made a remark that I find to be of great interest: “First of all, unquestionably, this situation is really appalling. And anybody from outside the legal system who looked at what happened here, or within the legal system, hopefully, is going to be disturbed to see this kind of situation.”
I must agree that an award of an $88,000.00 attorney fee on a $25,000.00 collection that had already been paid was indeed appalling, but, that aside, there appears to be no question but that Judge Poliak did not consider his February 1992 order to be a judgment and that the judge did not intend his ruling on the Mitchells’ motion for attorney’s fees to be a final judgment. Judge Poliak made it clear that he did not believe that there was a judgment in effect in May of 1992 when he attempted to transmute his February 1992 order into a true judgment by adding to the printed May 15, 1992, judgment, in his own handwriting, the order that the clerk was to enter judgment, “nunc pro tunc as of December 11, 1991.” This handwritten addendum clearly demonstrates that the judge did not believe that there was a final judgment in effect between December 11, 1991, and May 15, 1992; otherwise, the judge would have had no need to try to “back-date” the May 15 judgment to the date of the order that summary judgment “may be entered.” 1 do not know what other reason that Judge Poliak might have had for inserting the mentioned hand-written addendum into the prepared, printed order; however, I might speculate that the judge was trying, somehow, to breath life into the February 1992 document that the Mitchells are trying to foist as a final judgment. Even if Judge Poliak had the authority to transport the effective date of his May 15, 1992, order into the past (something that I would challenge were it necessary), no one has seriously argued that the February 18, 1992, order filed with the Nevada district court on March 13, 1992, was magically transformed into the judgment that it was not, merely by virtue of Judge Poliak’s handwritten addendum.
Until such time as the Michells file the May 15, 1992, judgment with the clerk, and “amend their original notice,” as they said they were going to do, and as is required by NRS 17.350, there is and can be no foreign judgment for the courts of this state to enforce.[2]
*970 Finally, if the Mitchells ever come before this court with a Nevada judgment based on an authenticated copy of a final judgment, I would still have a serious question in my mind whether this state should enforce an attorney fee judgment of almost $90,000.00 on a $28,000.00 collection judgment. To my mind, such an award might very well be violative of the public policy of this state. Obviously, there is no need for my discussing the point any further at this juncture.

 There can be no doubt that we are dealing here with the Mitchells’ attempt to enforce the original February 18, 1992, California Superior Court order granting the attorney’s fee motion. This is the order that was filed in our district court on March 13, 1992. The Mitchells’ counsel insists throughout the documents filed in the district court that it is the February 18, 1992, order, and not the May 21, 1992, judgment, that she is seeking to enforce in the present proceedings. For example, in her opposition to Martillaro’s Motion to Vacate, filed in July, 1992, well after the May judgment had been entered, she makes it clear that the Mitchells were continuing to base their claim on the original order and not the judgment. Even in her answering brief counsel persists in this course. The first main heading of the brief reads: “The February 18,1992 Order Granting Attorney’s Fees Against Defendants Carl Martillaro and Eugene Chaney Is a ‘Judgment’ Under Nevada and California Law, for Purposes of the Uniform Act and under the Provisions for Full Faith and Credit under the U.S. Constitution, Article IV, § 1.” (Emphasis added). The Mitchells have made their position most clear, but, unfortunately for the Mitchells, the February 18, 1992, California order is clearly unenforceable and the March 13, 1992, California judgment, if properly authenticated, may very well be technically enforceable (aside from public policy considerations which I will discuss below).

 It would not appear necessary to cite case authority for the proposition that the Mitchells are trying to enforce a non-existent judgment, but I offer, in point, the case of Griggs v. Gibson, 754 P.2d 783 (Colo. Ct. App. 1988). When the judgment creditor in that case sought enforcement of a foreign judgment, he failed at the time of initiating the proceedings to file an *970 authenticated copy of the foreign judgment. At the hearing on the judgment, the debtor complained that the file did not contain an authenticated copy of the foreign judgment; whereupon, the creditor produced such a copy and asked that the court get on with it, which the court did. On appeal, the debtor’s argument was simply that “since plaintiff failed to file an authenticated copy of the foreign judgment in the first instance, the district court lacked authority to take any steps to enforce that judgment.” Id. at 785. This situation is exactly like the present case except that instead of failing to file any authenticated judgment, the Mitchells failed to file an authenticated copy of an enforceable, final judgment. The appellate court in Griggs quite properly held that “the filing of the authenticated copy of the foreign judgment is not a mere administrative step that may be waived; it is, rather, the equivalent of the entry of an original judgment by the domestic court and, thus, is a necessary condition precedent to the domestic enforcement of that judgment. Id. at 785. The Mitchells failed here by failing to file a final judgment. They might just as well have filed a will with the court as the February 1992 order.